## Manning *v.* Millbourne Borough Civil Service Commission, Appellant.

Argued September 24, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Alphonsus R. Romeika,* with him *Ione T. Romeika* and *Romeika, Fish & Scheckter,* for appellant.

*Howard Richard,* with him *Berman & Richard,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 27, 1956:

This is a proceeding in mandamus by the plaintiff, Jacob J. Manning, to compel the defendant Civil Service Commission of the Borough of Millbourne, to grant him a hearing regarding his discharge from the position as patrolman on the borough police force for reasons that he felt were not valid. The court below, sit-

ting without a jury, entered a decree nisi ordering the defendant to grant a hearing to plaintiff. From the final order of the court en banc dismissing defendant's exceptions to the opinion and decree of the trial judge, defendant took this appeal.

The plaintiff was appointed chief of police of the borough by its council at a council meeting on January 3, 1951 at an annual salary of $3,600. This was plaintiff's first employment on the borough police force, he never having served the borough as a patrolman previous to being sworn in as chief of police. In September, 1951, the borough council passed an ordinance relating to the police department whereby the plaintiff was again designated as chief of police at the same salary and four other individuals were appointed as patrolmen at a salary of $3,000 per annum. Plaintiff performed the duties of chief of police from January, 1951, until February, 1954, at which time the office of chief of police was abolished, the police force reduced to a total of four patrolmen, and plaintiff became a patrolman. Plaintiff performed the duties of patrolman until December, 1954, when, at a regular meeting of the borough council, he was dismissed from the Millbourne police force on charges preferred by a fellow policeman. It was from that dismissal that he requested a hearing before the Civil Service Commission which was denied on the ground that he had no civil service status.

Plaintiff does not contend that in abolishing the office of chief of police the council of the borough was activated by any improper motive. It is well settled that the borough council had the right, acting in good faith, to discontinue the office of chief of police: *Carey v. Altoona et al.*, 339 Pa. 541, 16 A. 2d 1; *Simasek et al. v. McAdoo Borough et al.*, 352 Pa. 306, 42 A. 2d

600; *McGuckin v. West Homestead Borough,* 360 Pa. 311, 62 A. 2d 23; *Scaccia v. Old Forge Borough,* 373 Pa. 161, 94 A. 2d 563. Plaintiff has no further claim to that office or the emoluments thereof, nor does he so contend. The only issue presented in this appeal is whether the attempted termination of his employment as a patrolman, without a hearing before the Civil Service Commission, is a valid and proper action in view of Article XI, §1185 of The Borough Code of July 10, 1947, P. L. 1621, §39, 53 PS §13300.21.[1]

Plaintiff, having the affirmative of the issue, the burden was on him to show that he had title de jure to the position of patrolman. This necessitated proof that he had been appointed in compliance with the applicable civil service law: *Detoro v. Pittston et al.,* 344 Pa. 254, 25 A. 2d 299; *Healey v. Jones et al.,* 152 Pa. Superior Ct. 18, 30 A. 2d 732; *Saar v. Hanlon et al.,* 163 Pa. Superior Ct. 143, 60 A. 2d 432. Strict compliance with the civil service laws is necessary; substantial compliance is not enough: *McCartney v. Johnston et al.,* 326 Pa. 442, 191 A. 121; *Detoro v. Pittston et al.,* 351 Pa. 178, 40 A. 2d 486.

The Act of July 10, 1947, P. L. 1621, 53 PS §12221 et seq., known as The Borough Code, added subdivision (j), Civil Service for Police and Firemen, to the Act of May 4, 1927, P. L. 519. Article XI, §1178 of The Borough Code, as amended in a manner not here ma-

---

[1] "If the person . . . removed . . . shall demand a hearing by the commission, the demand shall be made to the commission. Such person may make written answers to any charges filed against him not later than the day fixed for hearing. The commission shall grant him a hearing which shall be held within a period of ten days from the filing of charges in writing, unless continued by the commission for cause at the request of the council or the accused. At any such hearing, the person against whom the charges are made may be present in person and by counsel. . . .".

terial, by the Act of July 19, 1951, P. L. 1026, 53 PS §13300.14, provides: "Manner of filling appointments —Every position or employment in the police force or as paid operators of fire apparatus, except that of chief of police or chief of the fire department, or equivalent, shall be filled only in the following manner: the council shall notify the commission of any vacancy which is to be filled and shall request the certification of a list of eligibles. The commission shall certify for each existing vacancy from the eligible list, the names of three persons thereon, or a lesser number where three are not available, who have received the highest average. The council shall thereupon, with sole reference to the merits and fitness of the candidates, make an appointment from the three names certified, unless they make objections to the commission as to one or more of the persons so certified for any of the reasons stated in section 1177 of this act. Should such objections be sustained by the commission, as provided in said section, the commission shall thereupon strike the name of such person from the eligible list and certify the next highest name for each name stricken off. As each subsequent vacancy occurs in the same or another position precisely the same procedure shall be followed.

"In the case of a vacancy in the office of chief of police or chief of the fire department, or equivalent official, the appointive power may nominate a person to the commission. It shall thereupon become the duty of the commission to subject such person to a noncompetitive examination, and if such person shall be certified by the commission as qualified, he may then be appointed to such position, and thereafter shall be subject to all the provisions of this act.".

It is the declared intention of The Borough Code that it ". . . shall furnish a complete and exclusive system for the government and regulation of boroughs, . . .": §3501, 53 PS §15281. Section 1165 of the Code, 53 PS §13300.1, provides that ". . . Hereafter each and every appointment to and promotion in the police force or as fire apparatus operators paid directly by the borough in every borough shall be made only according to qualifications and fitness, to be ascertained by examinations which shall be competitive as hereinafter provided.". There is absolutely no evidence in the record that Manning ever took a competitive examination or qualified for appointment *as a patrolman* under the procedure set forth in §1178 of The Borough Code quoted above. Plaintiff's appointment as a patrolman, being in violation of the statutory prerequisites for such appointment, was therefore illegal. Inasmuch as he was never validly employed under The Borough Code as a patrolman, he is not entitled to the protection of its provisions regarding a hearing. In *Detoro v. Pittston et al.,* 344 Pa. 254, 260, 261, this Court said: "The legislature has declared in unmistakable terms that merit ascertained in a manner prescribed shall govern appointments to the police department and has formulated and announced the public policy of the state in that respect. An administrative officer is not permitted to violate such declared policy and no court may sanction its violation. An employment which in its inception violates such an act as this is illegal and against public policy and it is the duty of the administrative officers of the state or its civil subdivisions to discontinue any illegal employment when they note its illegality. The illegality should not go unchallenged. In such a case the defense is not waived by the action of the representatives of the municipality.".

Plaintiff contended in the court below, and also in this Court, that he was validly appointed as chief of police in accordance with the second paragraph of §1178 of The Borough Code, supra, and therefore could not be discharged from his position as a patrolman without a civil service hearing. A careful reading of the record leaves grave doubt as to whether the plaintiff was ever legally appointed as chief of police in accordance with §1178. But be that as it may, the issue here is whether Manning was validly employed as a patrolman. Section 1178 provides that "Every position or employment in the police force . . . shall be filled only in the following manner: . . .". There is no evidence that the procedure set forth for employment as a patrolman was followed when Manning was first employed in January, 1951, or at any time thereafter. The section is clearly mandatory and admits of no exception when a patrolman is to be appointed. To grant plaintiff's contention would require us to read an exception into §1178 to the effect that every position or employment in the police force, *unless filled by reduction in rank,* shall be filled only in the manner provided. This we cannot do. The Civil Service Act of June 5, 1941, P. L. 84, 53 PS §351.1 et seq., originally dealt with appointments in police forces in boroughs, incorporated towns and townships of the first class. Section 14 of this Civil Service Act, 53 PS §351.14, is practically identical with §1178 of The Borough Code except that it provides: "Every position or employment, except that of chief of police or equivalent official, *unless filled by promotion, reinstatement or reduction* shall be filled only in the following manner: . . .". (Emphasis supplied). The Civil Service Act of 1941 was expressly repealed in so far as it related to boroughs by The Borough Code of 1947. The Legis-

lature has clearly indicated, by removing the above italicized words from the comparable provisions in the Borough Code, that the position of patrolman of a borough can only be filled in accordance with the procedure set forth therein. Since appellee was never validly appointed a patrolman, he is not entitled to the protection of the civil service provisions of The Borough Code.

The order is reversed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The Chancellor found the following facts, based upon clear, unequivocal and uncontradicted evidence: Jacob J. Manning was appointed Chief of Police by Borough Council on January 3, 1951, after and pursuant to the Civil Service Commission's recommendation and *certification* of Manning to Borough Council for the office of Chief of Police. This recommendation and certification were made by the Civil Service Commission after a lengthy examination of Manning by the Chairman of the Commission who was duly authorized to do so by the Commission. Manning served until March 1, 1954, a period of over three years. The office of Chief of Police was then abolished and Manning was reduced to the rank of patrolman, in which rank he continued to serve until December 6, 1954, when he was dismissed summarily and without hearing. All that Manning asks is a hearing to which he is entitled under the Civil Service Law which had governed Millbourne Borough since 1947.

The present Civil Service Commission, the personnel of which was changed after March 1, 1954, alleged that Manning does not have civil service status and is

therefore not entitled to a hearing, because "the Civil Service Commissioners [in office at the time of the appointment] did not take the required oath and that Borough Council had not submitted to the Civil Service Commission plaintiff's name as a candidate for the office of Chief of Police as required by the Act, and further, that the Civil Service Commission had not given a non-competitive examination to the plaintiff and had not certified him as qualified to Council as required under the Act." These technical allegations made by the *present* Civil Service Commission were dismissed by the lower Court which found, after ample and uncontradicted testimony, that *the facts and the record refuted* and completely disproved their allegations.

The decision of the majority of this Court is based on a technicality which was not presented or argued or even thought of by appellant (the present Civil Service Commission). The decision not only works a great injustice upon Manning, but is also contrary to the spirit and intent of Civil Service Law and I believe to the letter of the law.

I would affirm the Order of the Court below on the able opinion of Judge DIGGINS.

Mr. Justice MUSMANNO joins in this dissenting opinion.