## Snizaski, Appellant, v. Zaleski.

Argued January 8, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Irving M. Green,* for appellants.

*Daniel J. Snyder,* Special Counsel, with him *Harry W. Crum,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE COHEN, March 28, 1963:

This is an appeal from a judgment in a mandamus proceeding, by agreement tried without a jury, instituted against appellees, the Mayor and City Council of New Kensington, Pennsylvania. Appellants, police and firemen dismissed from their jobs by appellees without a hearing, seek reinstatement to their former positions and damages for back wages. The court below denied the relief requested and an appeal was taken to this Court.

Before appellants can question the propriety of their removal, *the burden is on them to establish* that they were properly appointed under the civil service provisions of the Third Class City Code. *Manning v. Millbourne Borough Civil Service Commission,* 387 Pa. 176, 179, 127 A. 2d 599, 600-01 (1956) ; *Detoro v. Pittston,* 344 Pa. 254, 257, 25 A. 2d 299, 301 (1942). If their original appointment as police and firemen was not in conformity with the Code and regulations passed thereunder, then appellants are not entitled to the civil service protection afforded by that Act.

Under section 4404 of The Third Class City Code, each civil service board "shall . . . adopt . . . rules and regulations to cover the selection and appointment" of civil service employees including provisions for exami-

nations on all subjects considered necessary to determine the qualifications of applicants. Act of June 23, 1931, P. L. 932, art. XLIV, §4404, as re-enacted by the Act of June 28, 1951, P. L. 662, §44, 53 P.S. §39404.

In accordance with this provision, the New Kensington Civil Service Board adopted regulations providing, inter alia, that questions used in any examination be first approved by the Board; that papers be examined by at least two members of the Board; that the Board give two weeks' public notice prior to any examination; and that the Board seek to ascertain the habits, experience, standing and reputation of the applicants in the community. The findings of fact by the court below—which are amply supported by the record and with which we agree—were that these regulations were disregarded.

The purpose of the civil service acts was to establish a system whereby municipal employees would be selected on the basis of their qualifications. *Commonwealth ex rel. Donahue v. Shields,* 350 Pa. 129, 132, 38 A. 2d 17, 18 (1944). In order to insure and maintain the high standards established by the civil service laws, we have repeatedly held that *strict compliance* with their provisions is required and that substantial compliance is not sufficient. See, e.g., *Manning v. Millbourne Borough Civil Service Commission,* supra; *Detoro v. Pittston,* 351 Pa. 178, 182, 40 A. 2d 486, 488 (1945); *McCartney v. Johnston,* 326 Pa. 442, 191 Atl. 121 (1937).

Thus, we conclude that because of the aforementioned defects in appellants' appointments they never obtained civil service status and hence are not entitled to civil service protection under The Third Class City Code.

In view of our holding on this ground we need not pass upon the other defects which seem to be present in appellants' appointment.

Judgment affirmed.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The practical effect of the majority decision is to afford city council the opportunity to remove successful applicants from civil service positions for reasons other than those set forth in the code. This result is made possible because the majority places exclusive emphasis on procedural pre-examination omissions by the civil service board, without considering and determining the nature of such omissions and whether they adversely affected the quality or competitive character of the examination.

The primary objective of civil service is to secure the best qualified applicants in public positions on the impartial basis of fitness, ability, and merit, as ascertained by fair and adequate competitive examination. In addition to other ways, *one* way to achieve this desired objective is to encourage applicants of ability, integrity and industry to enter public service. That desired result may not be achieved if there is adherence only to the absolute requirement of "strict compliance" with the regulations, without a realistic regard for the importance to the system of the successful applicant, who, in good faith, has fulfilled every test *that was required of him* to demonstrate his suitability.

The cases cited by the majority do not compel the conclusion that "strict compliance" with *every* regulatory provision is so absolute a requirement that any omission by those in charge of enforcing the regulations—no matter how trivial or how remotely related to the real substance of eligibility—is such a fatal defect as to bar a well qualified applicant from the public service. In each of the cases cited by the majority, the facts disclosed one or more *major* inadequacies or *basic* omissions in the competitive selection process it-

self. It was in passing on such fundamental violations in the operation of the civil service law that this Court discussed the rule of "strict compliance" relied upon by the majority. *McCartney v. Johnston*, 326 Pa. 442, 191 Atl. 121 (1937), involved a provisional employee whose score on the competitive examination was so low as to render him unappointable. In *Detoro v. Pittston*, 344 Pa. 254, 25 A. 2d 299 (1942), and 351 Pa. 178, 40 A. 2d 486 (1945), the defects included: failure to announce the examination, failure to grade examination papers, failure to prepare an eligible list, signing of certificates before the examination, submission to council of a list containing nine names (instead of four, as was required) without any indication of which applicants had the highest scores. In *Manning v. Millbourne Borough Civil Service Commission*, 387 Pa. 176, 127 A. 2d 599 (1956), the police officer had not taken a competitive examination, nor was he otherwise qualified for appointment. It is obvious that in these cases the failures were of such an essential nature that they tended to constitute a total disregard of civil service.

In the instant case, however, the factual situation is entirely different, and the omissions complained of are, in reality, minor departures from regulations. There is nothing in the record before us to suggest that the pre-examination procedural omissions by the board in any way detracted from the effectiveness of the examination, or that it failed in its purpose to show the best qualified applicants on the basis of merit as ascertained by competitive examination. Nor is there anything indicating that there was any element of unfairness, favoritism, prejudice or other improper influence or circumstances shown or exhibited in the treatment of any applicant, or in the content of the examination itself, or in the manner in which it was conducted. There is no contention that the successful applicants reached

the eligible list by any means other than their respective achievements in the competitive examination given to all applicants after 13 days notice. No shortcoming or failure is attributed to any of the appellants. There is no claim that there was impropriety in the grading of the examinations, the preparation of the eligible list, or city council's selection from that list. Nor is there any suggestion that, before or after appointment, appellants failed in any manner to meet the requirements imposed by the appropriate public authority.

The successful applicants were appointed by city council on December 14, 1961, from the eligible list compiled by the board at the request of the council. They immediately undertook their duties and performed them (apparently satisfactorily), until they were dismissed (without any hearing) on January 16, 1962. Such dismissal was by a newly constituted city council, some seats on which had changed on January 1. The reasons assigned for such dismissal were procedural irregularities on the part of the civil service board. Surely, the practices of the board, as well as the irregularities complained of, were known to council or could easily have been ascertained by it prior to its making the appointments now challenged. Without assuming that one council was or is any more or less dedicated to the public interest than the other, the circumstances prompt this inquiry—was the council that dismissed these public servants motivated by the omissions of the board, or was it more influenced by the prospect of creating vacancies which it would fill?

The public service is not promoted by placing in the hands of council the opportunity to ignore omissions (of its own civil service board) in those instances where the successful applicants suit the preferences of the membership of *that* council and to raise objections to such omissions when the successful appli-

cants may not enjoy the same favor. By this device, the objectives of civil service (especially those concerned with selections, tenure and dismissals) can be and are effectively thwarted. The dangers to the merit system are obvious. In this case, such dangers could be avoided by our refusing to approve city council's dismissal of appellants. In my opinion, their removal because of the failures along the lines of "strict compliance" by council's own civil service board under the circumstances here presented is unwarranted and undeserved.

I dissent.