KERRY COAL COMPANY, Plaintiff,

v.

UNITED MINE WORKERS OF AMERICA, Arnold Miller, District # 5 of the United Mine Workers of America, Louis A. Antal, Jerry Ashton, Estel Taylor, James Beachem, Brian Short, John Doe, Richard Roe, and all others acting in concert with them or otherwise participating with them or acting on their behalf, Defendants.

Civ. A. No. 78–108.

United States District Court,
W. D. Pennsylvania.

May 1, 1979.

---

John Elliott and William Miller, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., J. Frank McKenna, Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

Lloyd Engle and Paul Puskar, Kuhn, Engle & Stein, Pittsburgh, Pa., for all defendants except Ashton, Beachem and Short.

Melvin Vatz, Pittsburgh, Pa., for defendants Ashton, Beachem and Short.

## MEMORANDUM OPINION

SNYDER, District Judge.

Kerry Coal Company brought action under 29 U.S.C. § 187(b) and pendent claims under Pennsylvania tort law for damages to its property and business sustained during the UMW strike of 1977–1978. Kerry Coal now moves to disqualify the firm of Kuhn, Engle and Stein from representing the United Mine Workers of America (the International), District 5 of the United Mine Workers (District 5), Arnold Miller, President of the International, Louis A. Antal, President of District 5, and Estel Taylor, District 5 Executive Board Member, because of a conflict of interest. Kerry Coal argues that depositions, pleadings and exhibits show that it is in the interest of the International to contend that any illegal strike-related activity is attributable to the improper actions of District 5. Kerry Coal claims that although the evidence indicates that the International did in fact advise District 5 that illegal actions by UMW members and the picketing of non-union mines had to stop, counsel for the International, being counsel for District 5 as well and in a conflict position, has not raised this potential defense. Plaintiff also contends that it is in District 5's interest to assert the claim that any illegal strike-related activities occurred as a result of improper actions by the International and suggests that "it may be in the interest" of District 5 and its officers to show that the International failed to order them to take steps to prevent illegal secondary activity in the District, although this would not necessarily relieve District 5 of liability.

The Plaintiff also states that Jay Kolenc, an organizer for the International, together with the other Defendants, planned illegal interference with its business operations and that the International should minimize Kolenc's participation and attribute responsibility for his actions to District 5, while District 5 should argue that Kolenc was the prime mover of any illegal activity. In addition, Kerry Coal asserts that District 5

Executive Board Member Estel Taylor personally participated in the picketing of Kerry Coal's Franklin Township operations and that it would be in the interest of District 5 to argue that Taylor was acting outside the scope of his authority, and in Taylor's interest to contend he was acting according to the policy and directives of District 5, even if it would not relieve him of liability.

Kuhn, Engle and Stein respond on behalf of all Defendants it represents that there is no conflict of interest between the International and District 5, between District 5 and Estel Taylor, District Executive Board Member, or between District 5 and other UMW members. They contend that the situation involving conflict as outlined by Kerry Coal contradicts sworn testimony and, therefore, the hypothetical defenses are not available to the International, District 5 or Taylor. For example, counsel admit on behalf of the International that Jay Kolenc is an International organizer and that he was present in Western Pennsylvania during the strike, but contend he was sent there to scout and survey non-union mines for possible future organizing campaigns. According to Defendants' counsel, District 5 authorized lawful picketing at Kerry Coal, but representatives of both the International and District 5 have denied under oath that the International was ever involved in picketing. The conflict does not appear.

Kuhn, Engle and Stein dispute that the evidence presented by Kerry Coal to demonstrate that District 5 Executive Board Member Taylor was arranging picketing outside of his assigned area of responsibility could be used to demonstrate that he was acting outside the scope of his authority as an Agent for District 5. They contend Taylor's authority as an Executive Board Member of District 5 is not limited by geography and that there is overwhelming evidence of District 5's awareness and ratification of activities by Taylor outside of his assigned sub-area.

They also argue that allegations that vouchers were deliberately falsified and that the Miners Legal Defense Fund was directly funded and controlled by District 5 present issues of credibility for the jury and, even if true, are irrelevant to the conflict of interest issue.

Counsel assure the Court that our concern about a potential conflict was brought to the attention of and was fully explained to Harrison Combs, General Counsel for the International, and Kenneth Yablonski, Attorney for District 5, immediately after it was first raised, and they found no conflict to interfere with the continued joint representation by Kuhn, Engle and Stein.

The pertinent Canon and Rule of Pennsylvania's Code of Professional Responsibility, which was adopted by this Court under Local Rule 22, provides:

"Canon 5  A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client"

\*      \*      \*      \*      \*      \*

"DR 5–105  Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure

of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

(D) If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, associate or any other lawyer affiliated with him or his firm may accept or continue such employment.

Our Court of Appeals has held repeatedly, in the context of joint representation of defendants in a *criminal* case, that:

"[R]epresentation of codefendants by the same attorney is not tantamount to the denial of effective assistance of counsel guaranteed by the sixth amendment. There must be some showing of a possible conflict of interest or prejudice, however remote, before a reviewing court will find the dual representation constitutionally defective."

*United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512 (3rd Cir., 1979), quoting *Walker v. United States*, 422 F.2d 374 (3rd Cir.), *cert. denied* 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970). Although many of the same type of considerations found in these criminal cases apply to joint representation of defendants in civil cases, see *International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2nd Cir. 1975), we believe it is unwise to mechanically apply in civil cases the full standard established for criminal cases, which involve Sixth Amendment considerations.

Two recent cases provide some guidance to joint representation in the context of civil litigation. *Aetna Casualty & Co. v. United States*, 570 F.2d 1197 (4th Cir. 1978), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), arose out of the crash of an Eastern Airlines plane in September 1974. After paying approximately 25 million dollars in wrongful death, personal injury and property damage claims, the plaintiff insurance company filed action for indemnification against the United States and four air traffic controllers employed by the Federal Aviation Administration. On plaintiff's motion, the district judge dis-

qualified the United States Department of Justice and the United States Attorney from representing the individual defendants because he perceived a conflict of interest violating DR 5–105(A) and (B), even though the court was advised the matter was discussed at length with the individual defendants and they had consented to the joint representation. The court of appeals reversed the district court, noting that it was, as a practical matter, unlikely that the individual controllers would incur personal liability, and based its decision on broader grounds, stating:

"It is our opinion that in disqualifying the Department of Justice in this case the district court erred in two respects. First of all, we find nothing in the record to support the conclusion of the court that 'an actual conflict exists.' We agree with counsel for the Government that in reaching this conclusion the court appears to have taken the position that the mere existence of multiple defendants in a case such as this inevitably creates a conflict of interest on the part of the lawyer undertaking to represent them. At the hearings and in its order the district court pointed out possible contentions which might be made by each of the four controllers which would exculpate him from liability, but cast the blame upon one or more of his codefendants, including the Government. These hypotheses, however, were based solely upon conjecture and ignored the representation of Government counsel, which was accepted by the court, that in the conference between the representatives of the Department of Justice and the controllers, there was no dispute among them either with respect to their duties and responsibilities or the details of the plane crash."

570 F.2d at 1200–01 (footnotes omitted).

In *Board of Education of New York City v. Nyquist*, 590 F.2d 1241 (2nd Cir. 1979), the plaintiff sought declaratory judgment on whether it had to merge seniority lists for male and female Health and Physical Education Teachers (HPETs) or to maintain separate lists. The New York State United

Teachers (NYSUT) took no position on the merits of the action, but it provided counsel for the male HPETs, who were joined as defendants and favored merger of the lists. The female HPETs, who were also defendants and members of the NYSUT and who favored separate lists, objected because, as members of NYSUT, " 'the female teachers [were] paying, in part, for their opponents' legal expenses.' " The court noted that there was no suggestion that the women's indirect financial contribution to the mens' counsel fees would undermine their attorney's loyalty to them or that their counsel would gain access to privileged information about the women. It refused to disqualify counsel stating it would consider disqualification "only . . . where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client" and "unless an attorney's conduct tends to 'taint the underlying trial' . . . courts should be quite hesitant to disqualify an attorney." 590 F.2d at 1246.

■ Applying the considerations set forth in these cases, we do not believe the evidence in the instant case shows such conflicts as would justify disqualification. In its Motion and the evidence it presented, Kerry Coal does not show specific instances of actual conflict. Both its Pretrial Statement and Motion for Disqualification speak in general terms about illegal strike activity without giving specific areas of conflict at each point and whether the reference is to improper picketing or to destruction of property and interference with Kerry Coal's business.

The fact that defense counsel plans to present consistent defenses for all of its clients, is not, of course, dispositive of the issue of conflict of interest. This Court should inform the Defendants of the possible advantages of retaining separate counsel. See *United States v. Donahue*, 560 F.2d 1039 (1st Cir. 1977). We believe that on the basis of the showing of possible conflict made here and defense counsel's assurances that no conflict exists, it is ade-

quate protection of the rights of all Defendants represented by Kuhn, Engle and Stein that they be so informed and allowed to determine the question of joint representation for themselves.

■ Nearly every case, criminal or civil, which involves more than one defendant presents the opportunity to each defendant to attempt to exculpate himself from liability or guilt by blaming any wrongdoing on the other defendant. But even where this possibility is especially apparent because of the differing circumstances of the defendants' involvement, courts have not necessarily held joint representation improper. *United States ex rel. McClindon v. Warden, Ill.*, 575 F.2d 108 (7th Cir. 1978), *cert. denied* 439 U.S. 856, 99 S.Ct. 170, 58 L.Ed.2d 163 (1978) (Attorney did not violate minimum standards of professional representation in representing one defendant by failing to attempt to exploit evidence that the other defendant, whom the attorney also represented, was in possession of the murder weapon as the two co-defendants fled from the murder scene.) *United States v. Kidding*, 560 F.2d 1303 (7th Cir. 1977), *cert. denied* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (Appellant's Sixth Amendment right to effective assistance of counsel was not violated by joint representation even though his co-defendant admitted possession of a stolen tractor-trailer but denied any knowledge that it was stolen while he claimed he had never engaged in any activity related to the vehicle.)

The Code of Professional Responsibility permits joint representation of clients with a potential conflict provided the attorney can represent them "adequately" and that each consents to the arrangement after "full disclosure". Disciplinary Rule 5–105. See *Aetna Casualty & Surety Co. v. United States, et al., supra; Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713 (7th Cir. 1977) (Law firm permitted to represent plaintiff in civil action even though it continued to represent a non-party corporation which owned 20% of defendant corporation and elected 40% of defendant's board of directors in matters unrelated to the suit.)

Although some may conclude that separate representation is the optimal solution to the conflict problem in this case, we cannot conclude on the basis of the evidence and arguments presented that we can, at this stage, determine that Kuhn, Engle and Stein cannot adequately represent all of its clients. We note that Kerry Coal has waited until the late stages of this litigation to move for disqualification when it would be particularly burdensome for the Defendants to retain new counsel. See *Board of Education of New York City v. Nyquist, supra; Central Milk Producers Cooperative v. Sentry Food Stores, Inc.,* 573 F.2d 988 (8th Cir. 1978). Our decision, however, is premised on the reasoning above.