## Napoli v. City of Harrisburg

*Joshua D. Lock,* for plaintiff.
*Nathan H. Waters, Jr.,* for defendant.

CALDWELL, *Chancellor,* May 28, 1981—This matter has been submitted for decision on the basis of a stipulation of facts and briefs.

Plaintiff is a former member of the Police Department of the City of Harrisburg and, prior to March 1978, was employed as a patrolman. He alleges that he was promoted to specialist sergeant on March 17, 1978 and served in that capacity until his retirement on October 10, 1980. The city contends that plaintiff was not properly promoted and remained in the status of a patrolman until his retirement. Plaintiff seeks to recover $4,084.76, with interest, which represents the salary differential of the two positions for the period from March 17, 1978 to October 10, 1980.

Plaintiff appears to have been the victim of unfortunate circumstances and we have concluded that his purported promotion was a nullity and that he cannot succeed in this action.

On March 1, 1978, the Police Civil Service Board of Harrisburg adopted an amendment to its rules and regulations which provided:

"Promotion to the rank of specialist sergeant will be at the discretion of the chief of police with the approval of the mayor."

At the time there existed a Basic Labor Agreement between the Fraternal Order of Police and the

City of Harrisburg which provided that "all promotions in the Police Bureau shall be made . . . by competitive examinations administered by the appropriate Civil Service Board. . . ."

In a memorandum to the mayor dated March 17, 1978, the city solicitor informed the mayor that it was his legal conclusion the Civil Service Board was authorized to appoint plaintiff a specialist sergeant and was acting within its authority in connection with this matter. The solicitor also advised that the mayor "may by executive order implement these promotions" as the supervisor of the police department and chief executive officer of the city. That same day the mayor asked the chief of police to promote plaintiff to specialist sergeant and, perhaps in haste, also informed the media that plaintiff was elevated to the new position. Apparently the mayor's request to the chief fell on deaf ears, for the latter never responded or acted and on March 21, 1978, the mayor announced that the activities of the 17th were a nullity.

To determine whether plaintiff was properly promoted to the position of specialist sergeant we must initially examine certain provisions of Article XLIV of The Third Class City Code, 53 P.S. §39401 et seq., which address civil service. Section 39401, entitled "Examinations required of all appointees," provides as follows:

"No person or persons may be appointed to any position whatever in the police department . . . except as otherwise provided by law . . . without having first passed all the examinations hereinafter provided for, and having been appointed in the manner and according to the terms and provisions and conditions of this article."

Section 39402 provides for the establishment of various civil service boards for each city, among

them a board "for the examination of applicants for appointment to any position in the police department." Section 39403 states in part: "Two members of the board shall constitute a quorum necessary for the transaction of the business of that board." Finally, section 39404 empowers each civil service board to "prepare and adopt such rules and regulations to cover the selection and appointment of all persons . . . as in the judgment of said boards shall be best adapted to securing the best service for the public." This section, however, does not give the board carte blanche with respect to these rules and regulations, for it continues:

"Such rules and regulations shall provide for the ascertaining and determining, so far as possible, the physical qualifications, habits, reputation, standing, experience and education of all applicants for such positions, respectively; and they shall provide for examinations upon any and all subjects deemed proper or necessary by said boards for the purpose of determining their qualifications *for the position sought and applied for.*" (Emphasis supplied.)

From the foregoing it seems clear that although a civil service board has the authority to waive an examination, it must, through its rules and regulations, provide mechanisms to determine the suitability of a particular applicant for a position. It further appears that these rules and regulations are to result from the transaction of business by a quorum of board members.[1] One of the obstacles to the amendment passed by the Harrisburg Board on

1. Although not dispositive of the issue before us, we note that the generally accepted definition of quorum, which we feel applies here, is "the minimum number *required to be present at an assembly* before it can validly proceed to transact business." Webster's New Twentieth Century Unabridged Dictionary (2d ed. 1976). (Emphasis supplied.)

March 1, 1978 (creating the position of specialist sergeant) is that it was not adopted at a board meeting with at least two members present. The purported amendment was simply "presented by the city administration and signed by two of the three members . . . independently of each other." Paragraph 7 of stipulation. This action in itself seems to sidestep, if not violate, the plain language of the Third Class City Code.

More disturbing is the fact that the amended provision avoids the statutory mandate by providing for promotion subject to "discretion of the chief of police with the approval of the mayor." A case that continues to be a persuasive precedent on the issue of compliance with statutory requirements applicable to civil service positions is DeToro v. Pittston, 351 Pa. 178, 40 A.2d 486 (1945), wherein the court affirmed a judgment n.o.v. entered against appellant-policeman. The basis of the court's holding was noncompliance with one of the civil service statutory sections. Appellant argued that he was improperly discharged and both counsel agreed that his discharge would indeed be invalid if he had been properly appointed. The threshold question, therefore, was whether the initial appointment was valid. In finding that it was not, the court said:

"This was a clear and flagrant violation of the legislative mandate. Under such circumstances, no valid appointment could be made . . . . Any other construction would entirely defeat the purpose of the Civil Service law, and again place the filling of such places in the public service on a political patronage basis alone.

"Plaintiff says that the board substantially complied with the statute, and for that reason his appointment was a valid one. In cases of this kind, substantial compliance is not sufficient. There must

be strict compliance with the terms of the statute .... Plaintiff also argues that, since he was dismissed without a hearing, this was a violation of his rights provided by the statute. But inasmuch as he was never validly appointed under The Third Class City Law he is not entitled to the protection of its provisions." Id. at 181-82.[2]

In the case before us we find that at most "substantial" compliance occurred in the way the amended rule or regulation was passed and that, moreover, the provision ignores the purpose of merit selection embodied in the statute. The position of specialist sergeant has the vague qualification that it is open only to those who have held "specialist jobs" in the Harrisburg Police Department for at least one year. No evaluative criteria whatever are established. Further, even if the amendment was valid, its implementation was improper in that the mayor granted the promotion claimed by plaintiff whereas the resolution dictated that promotion was to originate with the chief of police, subject to approval by the mayor. Paragraphs 6 and 9 of stipulation. The specific issue of noncompliance with rules and regulations of a civil service board was addressed in Snizaski v. Zaleski, 410 Pa. 548, 189 A.2d 284 (1963), wherein the court upheld dismissals of policemen and firemen when the record amply supported the fact that their appointments had been in disregard of board regulations.

We deem it unnecessary to address the other arguments advanced by plaintiff, in which we find no merit.

---

2. This case is a prime example of the high degree of compliance that the courts will exact, for the only noncompliance that could be proven at trial was that plaintiff's name had been submitted on a list of *nine,* rather than a list of *four* applicants as required by the statute, as certified as qualified for the job.

## DECREE NISI

And now, May 28, 1981, judgment herein is rendered in favor of defendant. If no exceptions are filed hereto within 10 days this decree shall become final upon praecipe of defendant.