Paul **BERNARDI**, Plaintiff,

v.

**CITY OF SCRANTON**, et al.,
**Defendants.**

**Civ. No. 83–0202.**

United States District Court,
M.D. Pennsylvania.

May 21, 1984.

**28**

Thomas W. Jennings, Thomas H. Kohn, Sagot & Jennings, Philadelphia, Pa., for plaintiff.

William J. Hall, Edmund J. Scacchitti, City Sol., Scranton, Pa., for defendants.

W. Boyd Hughes, Hughes, Nicholls & Moran, Scranton, Pa., for Samuel Bevilacqua.

Edwin A. Abrahamsen, Abrahamsen & Moran, Scranton, Pa., for Louis D'Angelo.

Thomas J. Foley, Scranton, Pa., for Edward Dougher.

James G. McDonough, Carbondale, Pa., for Thomas O'Hara.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The plaintiff commenced the above-captioned § 1983 action on February 15, 1983, claiming that the defendants violated his first amendment and due process rights in discharging him from his position as a Foreman in the Department of Public Works [hereinafter "DPW"] of the City of Scranton.[1] Presently before the court are six motions, all of which are ripe for disposition. The court finds it unnecessary to discuss all of the points argued by counsel in connection with each motion. It is sufficient to say that, after carefully considering the parties' arguments, the court has decided to deny the defendants' motion for a non-jury trial because the plaintiff has raised viable legal claims for pecuniary and punitive damages. The plaintiff's motion to disqualify defense counsel will be denied because the movant has raised, at best, only a remote possibility of a conflict of interest.[2] Finally, the court will deny, on the ground that there is a genuine issue of material fact, the defendants' motion for summary judgment on the plaintiff's first amendment claim.[3] For the reasons set forth in the body of this Memorandum, however, the court will grant in major part the defendants' motion for summary judg-

---

**1.** The plaintiff also has included in his complaint an Age Discrimination in Employment Act (ADEA) claim and various pendent state claims. He has since dropped the ADEA claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 9 n. 2, Document 59 of the Record.

**2.** According to the Code of Professional Responsibility, an attorney must withdraw from the representation of multiple clients "if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C)." Pa. Code of Professional Responsibility DR 5–105(B), 42 Pa.Cons.Stat.Ann. (Purdon Supp. 1983–1984).

To support his view that a conflict exists here, the plaintiff points to the Second Circuit's recent decision in *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir.1984). Even a casual reading of the facts involved in *Dunton* demonstrates the acute nature of the conflict implicated therein. Although the plaintiff attempts to demonstrate a similar conflict or potential for a conflict by pointing to the purported failure of defense counsel to interpose a "good faith immunity" defense in the instant case, *see generally Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 & n. 30, 102 S.Ct. 2727, 2738–39 n. 30, 73 L.Ed.2d 396 (1982), it is apparent that the defendants intend to raise such a defense at trial. *See* Memorandum of Law in Opposition to Plaintiff's Motion to Disqualify Counsel at 6–7. It suffices to observe that the purported potential conflicts cited by the plaintiff are not supported in the instant record. Accordingly, the motion will be denied. This, however, shall be without prejudice to a renewal of the motion if circumstances should warrant such a course. Finally, the individual defendants should be advised "of the possible advantages of retaining separate counsel." *Kerry Coal Co. v. United Mine Workers*, 470 F.Supp. 1032, 1036 (W.D.Pa.1979). In an effort to ensure that the individual defendants are so informed, the court will direct defense counsel to make "full disclosure of the possible effect of [multiple] representation on the exercise of his independent professional judgment on behalf of each [client]." DR 5–105(C).

**3.** The court's decision to deny the motion also applies to the pendent claims raised pursuant to the free speech and assembly principles contained within the Pennsylvania Constitution.

ment on the plaintiff's due process and related pendent claims and consequently will deny the plaintiff's motion for partial summary judgment on the same claims. The court will hold in abeyance the remainder of the cross motions for summary judgment pending an expansion of the record as discussed herein. Finally, for the reasons appearing below, the court will not reach the motion to dismiss filed by defendant Bevilacqua and the motion for summary judgment filed by defendant O'Hara.

## FACTUAL BACKGROUND

According to the plaintiff,[4] in early 1978 he was asked by his father-in-law, a member of the Civil Service Commission,[5] if he would be interested in working for the City of Scranton. *See* Transcript of Deposition of Paul R. Bernardi at 4, Document 44 of the Record [hereinafter "Bernardi Deposition"]; Affidavit of Plaintiff Submitted in Support of Memorandum in Opposition to Defendants' Motion for Summary Judgment ¶ 2, Document 60 of the Record [hereinafter "First Bernardi Affidavit"]. The plaintiff indicated that he would like such a job, and his father-in-law agreed to see if he could aid the plaintiff in securing employment with the city. Bernardi's Deposition at 4–5. The plaintiff was referred to Gaynor Cawley, who was to become the Director of DPW when the new mayoral administration assumed office. *See* Affidavit of Paul Bernardi Submitted in Support of Memorandum of Law in Support of Motion for Partial Summary Judgment ¶ 2, Document 72 of the Record [hereinafter "Second Bernardi Affidavit"].

On January 19, 1978, the plaintiff filled out an application for employment with the city and indicated that he desired the position of "supervisor." *See* Exhibit 1 appended to Bernardi Deposition. Subsequently, the plaintiff was asked to meet with Cawley to discuss the possibility of working for DPW. *See* Bernardi Deposi-

tion at 5. In affidavits submitted to the court, the plaintiff has stated:

> Mr. Cawley gave me a verbal examination to test my fitness and ability for the position of Foreman in the Bureau of Highways, Department of Public Works. In doing so, he examined my construction background and knowledge, and ascertained that I was physically fit to perform the duties associated with that position.

First Bernardi Affidavit ¶ 2; Second Bernardi Affidavit ¶ 3. On February 10, 1978, Cawley wrote to the city's business administrator advising him that the plaintiff would be appointed to the position of foreman in the Bureau of Highways on February 13, 1978. Exhibit 2, appended to Second Bernardi Affidavit. On February 15, 1978, an unsigned memorandum was sent to the Civil Service Commission from the city's Department of Administration. The memorandum stated:

> Please be advised that *Mr. Paul Bernardi*, 1134 W. Gibson St., Scranton, Pa. 18504, Social Security # 195–30–6674 has been appointed Foreman in the Bureau of Highways, Dept. of Public Works at a salary of $12,700.00 effective February 13, 1978.

Exhibit 2, appended to First Bernardi Affidavit (emphasis in original).

The plaintiff claims that, "[i]n early 1981, [he] was made aware of the fact that [his] position was covered by the Civil Service Rules and Classifications for Scranton." First Bernardi Affidavit ¶ 4. On June 8, 1981, the plaintiff wrote to the new Director of DPW, Richard Novembrino, asking, "would you, as Director of Public Works, please send a letter to the Civil Service Commission of Scranton, verifying that I am entitled to ... Civil Service Status?" Exhibit 2, appended to First Bernardi Affidavit. Novembrino, in turn, wrote to the Civil Service Commission asking the Commission to "[p]lease investigate this

---

**4.** All facts relied upon are taken from materials submitted by the plaintiff. All fair inferences to be drawn therefrom are taken in the light most favorable to the plaintiff.

**5.** The plaintiff's father-in-law, Samuel Bevilacqua, is a defendant in this action.

matter and advise me of the status of this request." Exhibit 1, appended to Second Bernardi Affidavit. Presumably as a result of Novembrino's inquiry, the plaintiff received a letter from the Commission which stated, "[t]his is to legally certify your position this day March 19, 1981 as Foreman in the Bureau of Highways in the Department of Public Works." Exhibit 3, appended to First Bernardi Affidavit.[6] Subsequently, the Commission sent a second letter, stating, "[t]his is to legally certify your position as of this day June 22, 1978 as a Permanent Employee in the Bureau of Highways in the Department of Public Works." Exhibit 4, appended to First Bernardi Affidavit.

On March 24, 1982, the plaintiff was given a letter of termination which stated that his services were no longer required as of the end of that day. On August 16, 1982, the plaintiff's former attorney sent a letter to the Civil Service Commission in which it was asserted that the plaintiff's dismissal violated various provisions of the Commission's rules. The attorney asked the Commission to investigate, stating:

> By way of this letter, my client is requesting the Civil Service Commission to make a complete investigation of the above-mentioned violations amounting to a total disregard of the Rules and Classifications of the Civil Service Commission by the present administration of the City of Scranton; and further, to order his reinstatement to the position of Foreman in the Bureau of Highways, along with his back wages from March 24, 1982.

Exhibit 8, appended to First Bernardi Affidavit. The plaintiff has never received a response. First Bernardi Affidavit ¶ 12.

## DISCUSSION

The plaintiff claims that the failure of the defendants to provide a hearing in connection with his dismissal constitutes a violation of his right to due process of law. To support the proposition that he was entitled to protection under the due process clause, the plaintiff asserts that he possessed a legitimate expectation of continued employment by the City of Scranton. Specifically, the plaintiff claims, various civil service statutes and city ordinances provide that Scranton's civil service employees cannot be discharged without just cause. In addition, the plaintiff alleges that the defendants refused to provide him with a hearing and the other procedural protections provided to civil servants. This, the plaintiff claims, constitutes a violation of various provisions of state law.[7]

The defendants argue that the plaintiff was not a civil service employee within the meaning of state and city law. According to the defendants, certain procedures must be followed in connection with an employee's appointment before he may claim the protection of the various state and municipal civil service provisions. Asserting that the plaintiff was not appointed in accordance with these prerequisites, the defendants conclude that the plaintiff may not claim the protection of the civil service laws and that, consequently, he cannot prove that he possessed a legitimate property interest in continued employment with the city.

In resolving the question whether the plaintiff possessed a legitimate property interest in continued employment with the City of Scranton, it is necessary to refer to state law. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or under-

---

**6.** Strangely, Novembrino's letter to the Commission is dated June 15, 1981, but the Commission's letter to the plaintiff is dated March 19, 1981. The plaintiff states in his affidavit, however, that he did not receive the Commission's March 19th letter until after Novembrino sent his June 15th letter. *See* Second Bernardi Affidavit ¶ 6. This statement has not been disputed

by the defendants. Accordingly, it is accepted as true for purposes of the present motions.

**7.** Specifically, the plaintiff raises pendent claims under the Pennsylvania Local Agency Law, 2 Pa.Cons.Stat.Ann. §§ 551–555, 751–754 and Article VIII, § 810 of the Home Rule Charter and Administrative Code of the City of Scranton.

standings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). The plaintiff contends that the state and municipal civil service provisions conferred upon him a legitimate expectation of continued employment with the city.

■ Under Pennsylvania law, it is well settled that one who would invoke the protections afforded by civil service provisions must first demonstrate that he has been validly appointed under those laws. *See, e.g., Snizaski v. Zaleski*, 410 Pa. 548, 549, 189 A.2d 284 (1963); *cf. Detoro v. Pittston*, 344 Pa. 254, 260, 25 A.2d 299 (1942) (*Detoro I*) ("Permanency of tenure applies only to those who have appointments in compliance with the law."). Moreover, the Supreme Court of Pennsylvania has stated numerous times that an appointment will be considered valid only if there has been strict compliance with the terms of the civil service laws. *See Snizaski*, 410 Pa. at 550, 189 A.2d 284; *Manning v. Millbourne Borough Civil Service Commission*, 387 Pa. 176, 179, 127 A.2d 599 (1956); *Detoro v. Pittston*, 351 Pa. 178, 182, 40 A.2d 486 (1945) (*Detoro II*); *McCartney v. Johnston*, 326 Pa. 442, 446, 191 A. 121 (1937); *Scott Township Civil Service Commission Appeal*, 166 Pa.Super. 486, 490, 72 A.2d 137 (1950); Substantial compliance is not sufficient. *Manning*, 387 Pa. at 179, 127 A.2d 599, *Detoro II*, 351 Pa. at 182, 40 A.2d 486. The Pennsylvania Supreme Court has explained:

The fundamental purpose of the Civil Service Acts was to regulate and improve civil service in the cities of the Commonwealth by establishing a system whereby municipal employees would be selected on the basis of their qualifications. To achieve this end, the acts required that all appointments and promo-

tions in the civil service ... were to be made according to fitness, ascertained as far as practicable by competitive examinations.... So that purpose may be realized, the statutory provisions regulating appointments call for strict compliance with the terms of the acts.

*McCartney*, 326 Pa. at 446, 191 A. 121.

■ Any municipal employment which does not comport with the precise terms of the applicable civil service provisions is illegal and against public policy. *Detoro I*, 344 Pa. at 261, 25 A.2d 299; *Healey v. Jones*, 152 Pa.Super. 18, 22, 30 A.2d 732 (1943). Because a failure to comply with civil service provisions concerning appointment makes the resulting employment illegal "in its inception," *Detoro I*, 344 Pa. at 261, 25 A.2d 299, the administrative officials of the municipality involved cannot subsequently validate the appointment and "endow [the employee] with permanency of tenure." *Healey*, 152 Pa.Super. at 22, 30 A.2d 732. Indeed, it has been stated that municipal officers have the affirmative duty to remove those appointed improperly and a prior failure to remove such employees does not amount to a waiver of the defense of illegality. *Detoro I*, 344 Pa. at 261, 25 A.2d 299. The Pennsylvania Superior Court has held that a person appointed in violation of the precise terms of a civil service provision attains only the status of a "provisional employee." *DeSarro v. Snowdon*, 157 Pa.Super. 150, 152–53, 42 A.2d 89 (1945). Such an employee possesses essentially no protection under the civil service laws, even if the departure from the appointment provisions was caused by the Civil Service Commission itself. *Id.* at 153, 42 A.2d 89; *accord, McCartney*, 326 Pa. at 447–48, 191 A. 121 ("[N]either negligence nor connivance can cause a provisional appointment to ripen into a permanent one.").[8]

---

8. The plaintiff asserts that "[e]ven if it normally would have been required that [he] pass a Civil Service Examination, the Defendants' argument that he did not pass such an examination would be without merit because they did not offer to administer an examination to him." Plaintiff's Reply to Defendants' Brief in Opposition to Mo-

tion for Partial Summary Judgment at 4, Document 93 of the Record. Despite his protestations to the contrary, *see id.* at 8, the plaintiff's argument sounds suspiciously like estoppel. The court observes that an estoppel here would operate against a new administration but would arise from the failure of the prior administra-

*The Home Rule Charter*

Clearly, since plaintiff relies upon civil service provisions to demonstrate that he possessed a property interest in his employment, the court must first determine whether the plaintiff was validly appointed under those laws. The parties have extensively briefed this question and have cited many state and municipal provisions. The plaintiff first cites § 801 of the Home Rule Charter of the City of Scranton. That section provides:

Employment promotion and discharge of all persons from full-time positions of employment with the city shall be accomplished through a merit personnel system which shall be based on fitness for the position demonstrated by examination or other evidence of competence. The Business Administrator and the Department of Administration shall develop appropriate measures of competence for all positions within the city's employment. These measures or tests must be approved by the Mayor and Civil Service Commission of the city, which is hereby charged with the responsibility of approving the tests or measures of competence for all city positions and for hearing appeals from individuals who claim that employment or promotion has been awarded to other than qualified individuals. Individuals who are employed or promoted to positions in the city service on the basis of the above mentioned tests or measures of competency shall retain that position within the city service and shall not be removed, demoted, disciplined, or discharged except for just cause. Individuals removed, demoted, disciplined, or discharged from their positions shall have the right to appeal the question of just cause to the Civil Service Commission of the City. The decision of the Civil Service Commission on any appeals shall be final and binding on the individual and the Mayor and the Administration of the City.

To support his contention that he was appointed in conformity with this provision, the plaintiff argues that his interview with Gaynor Cawley was, in fact, a "verbal examination." *See* Bernardi Affidavit ¶ 2. Moreover, the plaintiff argues that the Mayor implicitly approved the verbal exam as a sufficient test or "measure of competence" under § 801 when the Civil Service Commission was apprised of his appointment by a memorandum from the city's Department of Administration. Finally, the plaintiff contends that in light of the two letters stating that his position was "legally certified," the Civil Service Commissioners "are now hardly in a position to assert that the competency examination … was anything less than satisfactory for purposes of Section 801." Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment at 18, Document 67 of the Record.

The court finds plaintiff's arguments to be unpersuasive, for their adoption here would require the court to endorse a strained construction of § 801 and would not be in keeping with the Pennsylvania Supreme Court's direction that strict compliance with civil service laws must be observed. Even accepting the plaintiff's vague characterization of the Cawley interview as a "verbal examination," the court cannot agree that under § 801 the Department of Administration can approve, in the

---

tion to comply with the law existing at the time of the plaintiff's appointment. This would seem anomalous, for it appears that a new administration would have a legal duty to remove those appointed improperly by the prior administration. *See Detoro I,* 344 Pa. at 261, 25 A.2d 299.

Be that as it may, the plaintiff's argument might nonetheless have some persuasive force if it could be said that the civil service statutes were designed exclusively, or at least primarily, for the protection of government employees. Significantly, however, the "fundamental pur-

pose" of these provisions is to secure the most qualified individuals for municipal employment. *McCartney,* 326 Pa. at 446, 191 A. 121. Hence, if we were to endorse the plaintiff's argument, we would be departing from both the legislative purpose and the Pennsylvania Supreme Court's direction to ensure that the statutory provisions are followed strictly. We decline to take such a departure. Finally, the court notes that the case cited by plaintiff to support his argument, *Cornman v. Philadelphia,* 380 Pa. 312 (1955) is inapposite.

Mayor's stead, the exams and measures of competence required by that section. Section 801 provides that the Department of Administration shall formulate the exams or other measures of competence, and that the Mayor and the Civil Service Commission shall have the responsibility of approving such tests. Given this division of responsibility, it would make little sense to hold that the Department of Administration can discharge the Mayor's responsibility to approve an exam or test when it is the Department of Administration which is charged in § 801 with formulating appropriate measures of competence in the first instance. In addition, the court cannot read § 801 to permit the Mayor and the Civil Service Commission to approve, and thereby validate, exams or other measures of competence after they have been administered, and, indeed, in the case of the Commission here, after the employee involved has been appointed and employed for a number of years.

■ Inasmuch as the court finds that, under the plaintiff's version of relevant events, there has not been strict compliance with the appointment procedures set forth in § 801, that section cannot be relied upon to demonstrate a legitimate expectation of continued employment in this case.[9] Accordingly, the defendants are entitled to summary judgment on this point as a matter of law. Similarly, the defendants are entitled to summary judgment on the pendent claim raised under the Home Rule Charter.

*Rules and Classifications of the Commission*

The plaintiff next contends that the 1965 Rules and Classifications of the Municipal Civil Service Commission of Scranton conferred upon him a legitimate expectation of continued employment. To support this view, the plaintiff notes that the position of "foreman" in the Bureau of Highways and Sewers is listed by the Civil Service Com-

mission as one of the positions falling within the non-competitive class of positions. Because the Commission's list of positions states that "the positions hereinafter named are entitled to civil service protection," the plaintiff argues that he, as foreman in the Bureau of Highways, is entitled to protection.

■ The court rejects this contention. The mere listing of positions by the Commission in its rules and classifications does not confer upon all appointees to those positions the protections offered by the civil service laws. A contrary view would render meaningless the goal of the civil service laws, *viz.*, to secure the best qualified public servants and to avoid the practice of filling positions solely on the basis of political patronage. *Accord, Detoro II,* 351 Pa. at 182, 40 A.2d 486. As noted, *supra,* the critical question here is whether the plaintiff's appointment comported with the laws of which he wishes to take advantage. The Commission's rules set forth procedures for the appointment of personnel to the positions falling within the noncompetitive class. Rule XVIII, ¶ 2 provides:

A vacancy in any position in the Non-Competitive Class may be filled by the appointment of any person who, upon nomination by the appointing officer to the Commission, and upon appropriate examination, shall be certified by the Commission to be qualified to perform the duties of the position.

Clearly, strict compliance with this rule would have required Cawley to nominate the plaintiff and then the Commission to examine and certify him as qualified. In the present case, however, it is undisputed that Cawley—not the Commission—administered the alleged examination. Since the rule was not followed precisely here, the plaintiff may not take advantage of the other rules affording protection to properly appointed individuals. This being the case, there is no legitimate expectation of contin-

---

9. The court does not reach the defendants' contention that the plaintiff's appointment did not

comply with § 802 of the Home Rule Charter.

ued employment under the Commission's rules, and therefore, no due process violation.[10]

### Second Class City A Code

The plaintiff next relies upon the Civil Service provisions contained within the Commonwealth's Second Class City A Code. *See* Pa.Stat.Ann. tit. 53, §§ 30451–30455. Section 30451 of the Code provides that covered employees cannot be discharged without a hearing conducted by a tribunal. To support his view that he is entitled to protection under this civil service provision, the plaintiff cites § 30454 of the Code, which provides:

On and after the date of passage hereof, municipal employes of the cities of the second class A listed in the competitive and non-competitive classes on the roster of the civil service commission and having served their probationary period shall be considered as having the status of civil service employes.

The defendants contend that this provision is not available to the plaintiff because his name never appeared on a roster and, in fact, could not appear because he had never been examined by the Commission. *See* Defendants' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment at 29, Document 83 of the Record.

The plaintiff asserts that he "clearly satisfied his probationary period and was certified in writing by the Civil Service Commission as having attained regular status." Accordingly, the plaintiff contends, he is entitled to claim civil service protection by virtue of § 30454. The plaintiff asks the court to construe § 30454 liberally as did President Judge Hoban in *Lucas v. City of Scranton*, 66 Lacka.Jurist 45 (1965), wherein it was stated:

It seems reasonable to believe that the three month probationary period ought to be sufficient time within which the appointing authority could determine whether or not the appointee had the requisite qualifications of age, physical

condition, passage of examination, etc., and if the regularity of the appointment could not be determined within that period, the [section] protects the appointee against future attacks. In so holding, we pass no judgment upon the possibilities of abuses under the Act, but simply consider the intention of the legislature as expressed in its plain words.

*Id.* at 50. Significantly, however, in *Lucas*, it was conceded by the City that the plaintiff therein was listed on the Commission's roster as a civil service employee. *Id.* at 48. There is no such concession in the present case. On the contrary, the defendants argue that the fact that the plaintiff was never given an exam by the Commission would preclude the listing of his name on the roster.

According to the cases reviewed by the court, § 30454 will not aid an individual whose name does not appear on the Commission's roster. *Whyte v. City of Scranton*, 55 Pa.Cmwlth. 353, 423 A.2d 473, 475 (1980); *Bonnert v. Hanlon*, 48 Lacka.Jurist 177 (1947). This requirement that one's name be included on the roster means "something more than inclusion on the city payroll." 423 A.2d at 475. Indeed, an individual cannot benefit from the section even if the failure of his name to appear is occasioned by the Commission's failure to maintain an official roster. *Bonnert*, 48 Lacka.Jurist 177.

The court notes that the defendants' statement regarding the non-inclusion of the plaintiff's name in the Commission's roster was made in a brief and not in an affidavit, deposition or other document acceptable for consideration under Rule 56. This being the case, the court will withhold decision on this aspect of the summary judgment motion for twenty (20) days to allow both the plaintiff and the defendants to submit proper documentation concerning the inclusion or non-inclusion of the plaintiff's name on the roster.

---

**10.** The court does not reach the defendants' contentions that the position held by the plaintiff was not the "foreman" position set forth in the 1965 rules.

*Local Agency Law*

■ The plaintiff's final contention[11] concerns the Pennsylvania Local Agency Law, 2 Pa.Cons.Stat.Ann. §§ 551–555 (Purdon Supp.1983–1984). Under this law, any decision by a local agency affecting property rights is invalid if the party affected was not afforded "reasonable notice of a hearing and an opportunity to be heard." 2 Pa.Cons.Stat.Ann. §§ 101, 553. The test for determining whether a property right has been affected for purposes of the Local Agency Law "tracks the inquiry mandated by the Supreme Court as to whether an employee has a 'legitimate expectation' of continued employment for purposes of the Fourteenth Amendment due process clause." *Abraham v. Pekarski*, 537 F.Supp. 858, 868 (E.D.Pa.1982) (footnote omitted), *aff'd*, 728 F.2d 167 (3d Cir.1984). Clearly, the Local Agency Law does not create a property interest in continued employment. Rather, it protects interests conferred elsewhere. Hence, the defendants are entitled to judgment to the extent that the plaintiff relies upon the Local Agency Law to support his claim of a property interest in continued employment under a due process theory. As to his pendent state claim under this statute, *see* Complaint, Count VIII, the court will hold the summary judgment motions in abeyance pending receipt of the additional evidence referred to in connection with § 30454 of the Second Class City A Code, *see supra*, for the Code might very well provide the property interest needed to state a claim under the Local Agency Law.

An appropriate Order shall enter.[12]

**11.** The court will not discuss the plaintiff's claim that he is entitled to protection under the State Civil Service Law, Pa.Stat.Ann. tit. 71, § 741.1 et seq. because it is undisputed that he was not employed by the Commonwealth of Pennsylvania.

**12.** Because the analysis set forth above applies with equal force to defendants Bevilacqua and O'Hara, the court does not reach the motions filed by these two individuals. These motions, however, shall be held in abeyance pending submission of the evidence referred to above concerning the Civil Service Commission's roster. In addition, although defendants D'Angelo and Dougher have not filed motions, the court

ORDER

In accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The defendants' motion for a non-jury trial is denied.

(2) The plaintiff's motion to disqualify defense counsel is denied. Defense counsel is directed to apprise each defendant fully of the risks inherent in multiple representation.

(3) The defendants' motion for summary judgment is granted in part, denied in part and partially held in abeyance.

(4) The plaintiff's motion for summary judgment is denied in part and partially held in abeyance.

(5) The motion to dismiss and motion for partial summary judgment filed by defendants Bevilacqua and O'Hara, respectively, are held in abeyance.

(6) The parties shall expand the record to demonstrate whether plaintiff's name was included on a civil service roster in 1978. This evidence shall be filed of record within twenty (20) days from the date of this Order.

may grant summary judgment in their favor to the extent set forth in the discussion above by virtue of the plaintiff's motion for partial summary judgment. *See, e.g.,* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 at 29–30 ("[T]he weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion …"). Accordingly, the court grants partial summary judgment in their favor and holds in abeyance the question regarding those claims which are dependent upon the content of the Commission's roster.