Re Benito J. MELE

v.

John T. FAHY, Frank G. Priore, and the Township of Parsippany-Troy Hills.

Civ. A. No. 82–1716.

United States District Court, D. New Jersey.

Feb. 13, 1984.

---

Kevin Michael Prongay, McKenna, Prongay & O'Grady, Newark, N.J., for plaintiff.

Donald L. Berlin, Lieb, Berlin & Kaplan, Morristown, N.J., for defendants Fahy and Tp. of Parsippany-Troy Hills.

Alfred J. Villoresi, Boonton, N.J., for defendant Priore.

## OPINION

STERN, District Judge.

This case arises out of plaintiff's allegation that his right to due process was violated as a result of his termination from his position as Police Director of the Township of Parsippany-Troy Hills. Named as defendants are John T. Fahy, the former mayor of the Township, who had appointed plaintiff to the position after signing a two-year contract with him; Frank D. Priore, Fahy's successor as mayor, who dismissed plaintiff; and the Township itself.

Defendants now move for summary judgment on the grounds that neither the Constitution nor the applicable statute, N.J. Stat.Ann. 40:69A–43, provides plaintiff with a cognizable liberty or property interest in the job; and that, by the terms of the cited statute, the contract between plaintiff and the former mayor was *ultra vires* and thus could not provide plaintiff with an entitlement to continuing employment. Since we find that plaintiff had no statutory right to a hearing prior to termination in these circumstances; that the terms of his contract were superseded by the operation of the statute; and that his position was one from which he could permissibly be terminated for "political" reasons by the new mayor, we will grant defendants' motion for summary judgment.

## FACTS

In the spring of 1980, defendant Fahy, at that time the Mayor of the defendant Township, entered into a contract whereby plaintiff was hired as the Police Director of Parsippany-Troy Hills for a period of two years, extending from May 1, 1980 to May 1, 1982.[*] The parties negotiated the terms of the proposed contract over a period of several weeks. The contract which defendant Fahy originally proposed to plaintiff provided that the term of office would extend from May 1, 1980 to December 31, 1981, which marked the last day of Fahy's term as mayor. In its final form, however, the contract stated a term of office extending from May 1, 1980 to May 1, 1982. In addition, it provided that, "The Director shall, in fulfilling his duties, be solely responsible to the Mayor."

This contract was signed by the plaintiff, defendant Mayor Fahy, and the township clerk on March 31, 1980. Minutes of a township council meeting held on April 3, 1980 indicate that at that time the council discussed the issue of hiring plaintiff for a contractual two-year term, with doubts raised as to the contract's validity (Prongay

---

[*] According to state statute and the municipal code of the Township, the Police Director functions as the department head of the police force.

*See*, N.J.Stat.Ann. 40:69A–43; Administrative Code of Township of Parsippany-Troy Hills § 2–9.

Aff., Sept. 16, 1983, Exh. J; Township Council Minutes, April 3, 1980). However, the council never voted to approve the contract itself. (Plaintiff's Second Interrog's., Q. 8).

On April 22, 1980, the council did vote to confirm the appointment of Mele as Police Director. (Stip. Facts, Aug. 29, 1983, ¶ 12). In so doing the council acted pursuant to N.J.Stat.Ann. 40:69A–43, which provides:

(a) The municipality shall have a department of administration and such other departments, not exceeding nine in number, as council may establish by ordinance. All of the administrative function, powers and duties of the municipality, other than those vested in the office of the municipal clerk, shall be allocated and assigned among and within such departments.

(b) Each department shall be headed by a director, who shall be appointed by the mayor with the advice and consent of the council. Each department head shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of a successor.

(c) The mayor may in his discretion remove any department head after notice and an opportunity to be heard. Prior to removing a department head the mayor shall first file written notice of his intention with the council, and such removal shall become effective on the twentieth day after the filing of such notice unless the council shall prior thereto have adopted a resolution by a two-thirds vote of the whole number of the council, disapproving the removal.

Plaintiff Mele served as Police Director starting in May 1980. On November 3, 1981, incumbent mayor Fahy was defeated in his bid for re-election by defendant Frank B. Priore, who remains mayor at the time of this lawsuit.

On the day following his election, mayor-elect Priore sent the following letter to plaintiff:

Dear Director Mele:

As you are undoubtedly aware, I am now the Mayor Elect of the Township of Parsippany-Troy Hills and scheduled to assume that position on January 1, 1982. Please accept this correspondence as advice of my intention to abolish the position of police director upon taking office. Please be further advised that under the authority of N.J.Stat.Ann. 40:69A–43 I intend to terminate your position as a department head on January 1, ·1982.

It is not disputed that plaintiff did not receive the opportunity for a hearing on the issue of his termination. On January 1, 1982, the duties of Police Director were assumed by Police Chief Elwood Fox, whose title and salary did not change. He continues to exercise these duties. There is no separate funding of the position of Police Director at this time (Priore deposition, 68–69, 79, 99–100).

## DISCUSSION

Following his termination, plaintiff filed this suit, alleging that the new mayor Priore, a Republican, had terminated him in retaliation for the fact that earlier in 1981 plaintiff had dismissed a certain police officer, an active political supporter of defendant Priore, from the police force for alleged insubordination.

Plaintiff argues that defendants did not comply with the terms of N.J.Stat.Ann. 40:69A–43 because they terminated him from office without affording him prior notice and a hearing, and contends that he was therefore deprived of his cognizable property interest in the position without due process.

Plaintiff also alleges that, in signing a contract for a two-year position with then-mayor Fahy, he had acquired a vested property interest of which he should not have been deprived without notice and a hearing.

Finally, plaintiff contends that his termination was undertaken out of Priore's desire to vanquish a perceived political oppo-

nent. Citing the recent Supreme Court decisions in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), plaintiff argues that a public employee may be terminated from his job for political reasons only if he functions in the capacity of a policy-making or confidential employee to his employer, or if he occupies a position for which party affiliation is an appropriate requirement. Plaintiff argues that the description of the duties of a police department director set out in the administrative code of the township and in the deposition testimony of both the present and former mayors describe a position which is administrative and not policy-making in its nature. Plaintiff contends, therefore, that the mayor's action represents an exercise of patronage power which unconstitutionally infringes his rights of free expression and belief when assessed according to the *Elrod-Branti* standards.

Defendants argue in response that the relevant state statute does not guarantee one in the position of plaintiff notice or a hearing before he may be terminated by an incoming mayor. They also assert that the employment contract which plaintiff negotiated with defendant Fahy while he was mayor is *ultra vires* and therefore void to the extent that it attempted to extend plaintiff's term of office beyond the term of the mayor appointing him and into the subsequent mayoral term. Therefore, they conclude, plaintiff possessed neither a statutory nor a contractual entitlement to due process prior to his termination.

Finally, defendants contend that, as created by state statute, the position of a department head such as Police Director is one of a confidential employee responsible solely to the mayor, and therefore is not protected from termination for politically motivated reasons, even assuming that such political motivation in the non-reappointment could be shown.

In analyzing the contentions of the parties, three issues must be addressed.

First, we will examine the terms and meaning of the statute to determine whether proper procedures were followed by defendant Priore in his termination of plaintiff without a hearing. Second, we must determine whether, in light of the terms of the statute and the municipal structure of the township government, the contract signed between defendant Fahy and plaintiff can be given any effect. Finally, we must determine whether the nature of plaintiff's job was one which afforded him constitutional protection from termination on the basis of his political affiliation, or whether the job was one from which defendant Priore could permissibly dismiss him for political reasons. Since this is defendants' motion for summary judgment, we will construe all facts in the light most favorable to plaintiff.

1. *Does the Statute Entitle Plaintiff to Due Process Prior to Termination by an Incoming Mayor?*

The Township of Parsippany-Troy Hills is governed by a so-called Mayor-Council Plan E form of municipal government as set out in N.J.Stat.Ann. 40:69A–1 to 40:69A–210, commonly known as the Faulkner Act or the Optional Municipal Charter Law. Under such a system of municipal government, department heads are appointed according to N.J.Stat.Ann. 40:69A–43, which is set forth on pages 1577–1578 *supra.*

Plaintiff attempts to characterize his situation as one which involves his removal from office. Therefore, he argues that the portion of the statute which is applicable to the situation when an incoming mayor declines to continue in office an appointee of his predecessor is N.J.Stat.Ann. 40:69A–43(c).

■ However, in concluding that plaintiff's situation involved the failure or refusal of an incoming mayor to reappoint a previously appointed officeholder, we find that it is N.J.Stat.Ann. 40:69A–43(b) which is relevant. We are persuaded by defendants' argument that subsection (c) is intended to apply to the situation in which a

mayor seeks to remove his own appointee during his own term of office. It is apparent that an individual designated as a department head by a mayor may properly expect that his employment will continue during the term of the appointing mayor. Hence if a mayor seeks to remove his own appointee, subsection (c) requires him to afford the individual prior notice and a hearing.

■ Similarly, it is clear to the Court that subsection (b) designates a maximum assured term for such appointee which is coterminous with that of the appointing mayor. Subsection (b) presumes that an incoming mayor will make his own appointments as department heads; hence the language that "Each department head shall serve during the term of office of the mayor appointing him." Likewise, we find that a plain reading of the statute makes it clear that "under N.J.S.A. 40:69A–43(b) department heads serve *only* during the term of office of the mayor appointing them," quoting *Miller v. Township of Wayne*, 154 N.J.Super. 247, 381 A.2d 94 (1977) (dealing with another issue of statutory construction). To presume that an incoming mayor could terminate his predecessor's appointees only with the advice and consent of the council, as plaintiff urges us to do by finding subsection (c) applicable, would render subsection (b) superfluous, a construction which is to be avoided. (*See State by Richman v. Sperry & Hutchinson Co.*, 23 N.J. 38, 127 A.2d 169 (1957)).

In addition, if subsection (c) were held to be applicable in this situation, a new mayor's wish to appoint department heads compatible with his policies could be frustrated by a two-thirds vote of the city council to keep in office the department heads of the previous administration. This could hardly be deemed a desirable result.

Support for this construction of the statute is provided by *Hutt v. Robbins*, 98 N.J.Super. 99, 236 A.2d 172 (App.Div.1967), involving the termination of a municipal solicitor by a new department head prior to the expiration of the term given him by ordinance. The court pointed out that in a municipality governed according to N.J. Stat.Ann. 40:69A–43, the mayor supervised all the governmental departments, and concluded that the language of the statute insured that "a new department head will not be compelled to continue the employment of a subordinate whom neither he nor the mayor who had appointed him had chosen and whose term, if he has one, may extend beyond that of the person who appointed him." *Hutt*, 98 N.J.Super. at 104–105, 236 A.2d 172. Such logic should as well govern a new mayor's power of appointment over department heads, themselves.

A further analogy is provided in the fact that at the level of state government in New Jersey, as in many other states and indeed in the federal government, department heads, usually termed members of the executive officer's cabinet, are appointed by the chief executive with the advice and consent of the Senate. The New Jersey Constitution states that these officials serve "during his (the executive's) term of office and until the appointment and qualification of their successors." (N.J. Const., Art. V, § 4, ¶ 2). An incoming executive is not expected to retain his predecessor's appointees, but may terminate them without Senate approval with the understanding that he will make appointments to the post.

In this case plaintiff argues that defendants did not even comply with N.J.Stat. Ann. 40:69A–43(b) because defendant Priore did not appoint a successor to plaintiff. However, neither custom nor the municipal code of Parsippany-Troy Hills requires that the position of Police Director be filled as a specific funded position. The municipal code states in section 2–9.1 that "The chief of police may also hold the office of (police) director. In the absence of a director, the chief will assume the responsibilities of the position." Deposition testimony of the defendants (*e.g.*, Priore deposition, 68–69, 79, 99–100), establishes that Elwood Fox, who was Police Chief during the period that

plaintiff served as Police Director, assumed the supervisory duties of the latter position after defendant Priore took office as mayor on January 1, 1982. Therefore the duties of the office were not left unattended.

We observe, as well, that the position of Police Director had not customarily been treated as a paid, separate position in the Township. Between 1970 and plaintiff's 1980 appointment, for example, in only one two-year period had there existed a separate individual appointed and salaried as Police Director. Much of defendant Mayor Fahy's own term had been conducted in the absence of a separate, paid Police Director.

In the light of these undisputed facts, we hold that defendant Priore properly complied with the terms of the applicable statute when he terminated plaintiff from his paid position and made the duties of Police Director part of the Police Chief's responsibilities. Although defendant Priore's November 4, 1981 letter stated that he was "abolishing" the position of Police Director, it is apparent that he simply referred to a cessation, for the time being, of the practice of employing a separate, fully funded Police Director. In so doing he followed the practices of most of his predecessors of the preceding decade.

2. *Does the Contract which Plaintiff signed for a Two-year Term give Him a Protectible Property Interest?*

Plaintiff argues that, even in the absence of a statutory right to notice and a hearing prior to his termination by an incoming mayor, he possessed a property right in continued employment, grounded in the two-year contract he had made with defendant Fahy, which entitled him to due process before termination. We find this contention, as well, to be unpersuasive.

■ We are persuaded by defendants' argument that this contract was *ultra vires* because it attempted to circumvent the clear intent of the statute that the term of a department head be coterminous with that of the mayor appointing him. Were such a contract to be given effect, an outgoing mayor would be able to prevent his successors from appointing politically compatible department heads simply by contracting with his own appointees for terms outlasting his own.

The general law of municipal corporations supports this view. In *Board of Education of Vocational School v. Finne,* 88 N.J.Super. 91, 210 A.2d 794 (Law Div.1965), the court cited with approval the following rule:

> Respecting the binding effect of contracts extending beyond the term of officers acting for the municipality, there exists a clear distinction between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its successors, whereas the latter is not subject to such limitation ... it is generally held that, independent of statute or charter provisions, the hands of successors cannot be tied by contracts ...

Citing 10 McQuillin, *Municipal Corporations* (3d Ed. 1950), § 29.10 at pp. 408–409.

Although ordinary employment contracts may extend beyond the term of the political official who makes them, it is generally accepted that:

> Where the nature of an office or employment is such as to require a municipal board or officer to exercise a supervisory control over the appointee or employee, together with the power of removal, such employment or contract of employment by the board, it has been held, is in the exercise of a governmental function, and contracts relating thereto must not be extended beyond the life of the board (or officer).

McQuillin, at 497–98.

Another general authority states that "If no definite term is fixed (by statute), the (municipal) office is held for the term of the appointing power, or at the will or pleasure of the authority which conferred it, provided the term so conferred does not exceed beyond that of the appointing power." 62 C.J.S. Municipal Corporations § 497.

In the case of a New Jersey municipal department head as described by N.J.Stat. Ann. 40:69A–43, the mayor exercises supervisory control and the power of removal over these subordinates, precisely the situation described. Thus we hold that defendant Fahy exceeded his powers when he attempted to authorize a contract extending beyond his own term as mayor. Such "a contract forbidden by charter or state laws is void, since all persons who contract with a municipal corporation are bound to know that contracts beyond its scope are void ..." McQuillin, § 29.71. Therefore, we find that plaintiff possessed no protectible property interest which safeguarded his job beyond the tenure of the mayor who appointed him.

■ Plaintiff argues that the contract must be honored because it was signed by the mayor and by the township clerk, and because the Township council itself approved his appointment. However, such apparent official approval cannot override the clear language of the statute which makes the term of a department head coterminous with that of the appointing mayor. The courts of New Jersey have held that a Faulkner Act municipal government may not adopt an ordinance which would authorize the city council to appoint certain officials since this would be contrary to the terms of the statute, see *Indyk v. Klink*, 121 N.J.Super. 314 at 320, 297 A.2d 5 (App. Div.1972). Here it is equally improper for this mayor and the Township to attempt to extend the term of a department head contrary to the language of the statute.

We conclude that the contract between defendants and plaintiff is *ultra vires* and of no effect. As a result, plaintiff suffered no infringement of property interests protected either by contract or by statute.

### 3. *Was Plaintiff's Position One Protected from Dismissal for Patronage Reasons?*

■ Plaintiff contends that there exists a factual issue as to whether he was terminated from his position solely due to his political opposition to the new mayor. Therefore, he argues, summary judgment would be inappropriate in this case; it is for a jury to determine whether defendant Fahy acted with impermissible intent. However, we hold that, even if we are to assume that plaintiff's termination was a politically motivated one, the Supreme Court's rulings on patronage jobs, particularly as applied recently by the Third Circuit, would permit a mayor constitutionally to dismiss one in the position of plaintiff for just such a political reason. Therefore, summary judgment is appropriate in this case.

In 1976, the Supreme Court held in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547, that dismissal of certain public employees solely for their political affiliation was a violation of their First Amendment rights. The plurality opinion concluded, however, that patronage dismissals of employees who occupied policy-making, advisory positions would not offend the First Amendment and hence would be permissible.

In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court elaborated on this standard to conclude that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; ... the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295.

Recently, in *Ness v. Marshall*, 660 F.2d 517 (3d Cir.1981), the Third Circuit applied these concepts to a suit brought by the former city solicitor of York, Pennsylvania and two assistants who alleged that the new mayor, a Democrat, had dismissed them because they were Republicans and in so doing had violated their First Amendment rights. In affirming the lower court's grant of summary judgment for defendants, the appeals panel examined the duties of the city solicitor as set out in the York Municipal Administrative Code. The court found that the solicitor was to be

appointed by the mayor, with advice and consent of the council, and was to serve at the pleasure of the mayor. His duties included controlling all legal matters and rendering legal opinions. The court concluded that such tasks did in fact "implicate broad policy or administrative goals.... Plaintiffs were in a position to thwart the goals of the new administration in numerous ways ..." *Ness*, 660 F.2d 517, 521 (quoting Memo. Opinion of Nealon, J., M.D.Pa., at p. 91a).

The Third Circuit court accordingly held that as a matter of law the plaintiffs occupied policy-making roles and thus could be subject to patronage dismissal. Summary judgment was therefore held to be appropriate, even though there was factual dispute as to whether the plaintiffs had in fact performed their duties in a technical and non-policy-oriented way. The court found that as a legal matter the job clearly contemplated policy-making involvement, and hence *Branti* and *Elrod* protections were deemed to be inapplicable.

We follow the analysis of the appeals court to the same conclusion in this case. The statute involved, N.J.Stat.Ann. 40:69A–43, provides that the Police Director is to be appointed by the mayor, with council approval, and to serve only during the term of that mayor. The township administrative code, moreover, gives the Police Director policy-making responsibilities. Section 2–9.2 states that the "control and discipline (of the department) shall be vested in the director and he shall have the power to promulgate rules and regulations for the day to day operation and discipline of the department; to enforce all rules and regulations and any general or special orders ...." Clearly the Police Director plays an active role in shaping the policies of the Police Department.

Plaintiff notes that the administrative code in section 2–9.3 provides that "the (city) council shall by resolution and with the consent of the mayor, establish such rules and regulations on policy matters as it may deem necessary for the government

and efficient working of the entire department", and argues that it is therefore the council which set policy. We do not dispute that this clause gives to the council certain policy-making powers; however, this clause in no way preempts the authority of the Police Director to set policies himself, particularly since the council's role is an explicitly discretionary one.

Similarly, it is immaterial to our holding that the depositions of defendant Mayors Fahy and Priore indicate that they perceived the position of Police Director as a non-policy-making one, and that under Fahy plaintiff did function in an apparently administrative way. (Fahy Dep., Aug. 25, 1983 at 20–23; Priore Dep., Aug. 25, 1983 at 55–58). Like the Third Circuit in *Ness, supra*, we find that the statute and administrative code delineating the job demonstrate that affinity of policy would be "an appropriate (even if not a necessary) requirement for the effective performance of the (job)...." 660 F.2d at 522–23. Having found as a matter of law that the position of Police Director, like other department heads, may be said to appropriately require a confidential, advisory relationship with the mayor, we accordingly hold that an incoming mayor in such a Faulkner Act government may decline to reappoint a predecessor's department head for those political reasons which would be impermissible if they were applied to a non-confidential public employee.

Since we hold that as a matter of law plaintiff possesses neither a statutory nor a contractual property entitlement to continued employment, and that his job was one properly subject to patronage dismissal, we enter summary judgment for the defendants.