Frederic A. CONJOUR

v.

**WHITEHALL TOWNSHIP and Elizabeth L. Buchmiller.**

Civ. A. No. 92–3831.

United States District Court, E.D. Pennsylvania.

April 18, 1994.

William H. Platt, Eckert, Seamans, Cherin & Mellott, Allentown, PA, for plaintiff.

Donald E. Wieand, Jr., John P. Servis, and Irene M. Chiavaroli, Weaver, Mosebach, Piosa, Hixson & Marles, Allentown, PA, for defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

In the context of a motion for summary judgment, I must initially decide whether a township police chief who was terminated shortly after the ascent of a new township executive may maintain a procedural due process claim against the township and township executive for their failure to give him notice and a hearing before terminating him when (a) he asserts a property interest grounded in civil service regulations, but his appointment to the position was not carried out in strict compliance with the regulations, (b) and a liberty interest based on damage to his reputation having occurred in conjunction with his termination. I find that because the plaintiff was not appointed in strict compliance with the civil service regulations, he cannot claim a property interest for which process was due. I do find, however, that plaintiff has raised a material issue of fact regarding violations of his liberty interests, caused by damage to his reputation having occurred during the course of his termination, which would entitle him to procedural due process rights.

I must also determine whether plaintiff may maintain a claim that he was fired because of his political affiliation based on evidence that he was terminated in order to make room for a replacement chosen for political affiliations, even if plaintiff's own political activities were not implicated, and if so, whether plaintiff's position was one for which political affiliation was an appropriate consideration. I find that plaintiff may maintain such a claim even when his own political activities did not motivate the termination, and that he has raised a material issue of fact regarding whether political affiliation was a permissible factor in personnel decisions for his position.

### I. STATEMENT OF MATERIAL FACTS

The following facts are either undisputed, or, where a material dispute exists, must be construed most favorably to the plaintiff in order to decide this motion for summary judgment. Plaintiff Frederic A. Conjour was appointed to the position of Chief of Police of Whitehall Township on September 30, 1980. Declaration of William H. Platt, Exh. B ("Platt Decl."). Although this was Mr. Conjour's first position with the Whitehall Township Police Department, he brought to his position sixteen years of experience as a police officer, three years of which were served as Chief of Police for West Grove Police Department in Baltimore, Maryland. Platt Decl. Exh. 3. Prior to his appointment by Whitehall Township, Mr. Conjour asserts that he was subjected to a two-hour long, oral, non-competitive examination under the authority of the Pennsylvania Department of

Community Affairs ("DCA"). *Id.* (Aug. 14, 1980 letter); Deposition of Frederic A. Conjour at 8–17 ("Conj. Dep."). This testing encompassed such topics as police administration, departmental organization, disciplinary actions, situational problems, and supervisory techniques. Conj. Dep. at 13–16. Mr. Conjour claims that during his interview for this position, inquiries were also made regarding his background, experience and education. Defendants challenge Mr. Conjour's characterization of his oral examination by the DCA as the equivalent of a civil service examination.

■■ The appointment of Chief of Police is regulated by various sections of the civil service rules which were promulgated by the Whitehall Township Civil Service Commission ("Commission"). According to the defendants, Mr. Conjour's appointment did not meet the requirements of two of these regulations.[1] Resolution No. 23, adopted by the Commission in 1964, requires that all candidates for the position of Chief of Police submit to a non-competitive civil service examination administered by the Commission. Defendants' Exh. A. The DCA, not the Commission, conducted Mr. Conjour's examination. Conj. Dep. at 8–17. However, Rule 604 of the Civil Service Regulations expressly authorizes testing by outside agencies, including the DCA. Platt Decl., Exh. 3. Luella Bundy, a member of the Commission, testified that she conducted an investigation confirming that Mr. Conjour was examined by the DCA, and informed other Commission members of that fact. Deposition of Luella Bundy, at 93. Resolution No. 23 also requires that any candidate appointed to the position of Chief of Police have at least ten years of service with the Whitehall Township Police Department. Defendants' Exh. A.

Harold D. Roach of the DCA notified the Township Executive, Edward Galgon, that Mr. Conjour was unanimously ranked first among all the candidates for the position of Chief of Police due to his performance on the oral examination. Platt Decl., Exh. B. Mr. Galgon then offered Mr. Conjour the position of Chief of Police and his appointment was approved by the Board of Commissioners on September 30, 1980 in a meeting attended by members of the Commission. Conj. Dep. at 13–17.

After Mr. Conjour began working, the Township provided him with a job description and a personnel manual detailing his duties as Chief of Police. Declaration of Frederic A. Conjour ("Conj. Decl."), Exh. 1; Platt Decl., Exh. 4 (Interrog. 22). According to Mr. Conjour, both of these items placed all policymaking authority over the Police Department with the Township Executive, not the police chief. *Id.* The defendants dispute this characterization. *See* Defendants' Reply Brief in Support of Motion for Summary Judgment.

The manual also contains a discharge procedure which provides that employees disciplined for unsatisfactory work performance will be subject on the first instance to a warning, on the second to a three day suspension, and finally, discharge. Conj. Decl., Exh. 2. The plaintiff never experienced a warning, or suspension. The manual also contains a disclaimer against the manual being treated as a contract, or in any way altering the at-will arrangement between the parties. Conj. Decl., Exh. 2.

In May of 1991 defendant Elizabeth L. Buchmiller was elected to the position of Whitehall Township Executive. Conj. Dep. at 32. Ms. Buchmiller was a registered member of the Democratic Party and ran in the Democratic primary election for Township Executive. Buchmiller Dep. at 12. She was also a write-in candidate on the Republican side and won that primary election as well. *Id.*

According to Mr. Conjour, both before and after Ms. Buchmiller won the primary elec-

---

1. Defendants argue that these regulations have not been properly authenticated, and therefore can not be treated as evidence in deciding this summary judgment motion. Defendants are correct that documents relied on to decide summary judgment motions are subject to the Federal Rules of Evidence. *See Cook v. Babbitt,* 819

F.Supp. 1, 25 (D.D.C.1993). However, local ordinances and regulations are official publications which are self-authenticating under Federal Rule 902(5). *See Ogden Envtl. Servs. v. City of San Diego,* 687 F.Supp. 1436, 1437 (S.D.Cal.1988). The regulations are therefore properly before me.

tion for the position of Township Executive, she told Michael Sefcik and others that Mr. Sefcik would replace Mr. Conjour as Chief of Police. *See* Snyder Dep. at 140–43; Bundy Dep. at 104–05; Platt Decl., Exh. 4 (Interrog. 8). Mr. Sefcik was a patrolman in the Whitehall Township Police Department. Mr. Sefcik and Ms. Buchmiller have been friends for fifteen years, and Mr. Sefcik supported Ms. Buchmiller during her 1991 campaign for the position of Township Executive. Buchmiller Dep. at 18–19; Bundy Dep. at 107, 120; Snyder Dep. at 140–44, 147, 154–55. Mr. Sefcik attended picnics hosted by Ms. Buchmiller, made yard signs for her during her campaign, and obtained a limousine for Ms. Buchmiller's use during her inauguration. *Id.* Ms. Buchmiller has acknowledged her friendship with Mr. Sefcik, and testified that she selected Mr. Sefcik as a candidate for the position of Chief of Police because of their long-time friendship. Buchmiller Dep. at 19, 44–45.

Mr. Conjour claims that approximately seven months after Ms. Buchmiller's election he was told by outgoing Township Executive Michael Harkal that he would be fired because of his political affiliations and failure to support Ms. Buchmiller's campaign. Conj. Dep. at 23. At all times during his employment with the Whitehall Township Police Department Mr. Conjour was a registered member of the Republican Party. Platt. Decl., Exh. 4 (Interrog. 1). However, Mr. Conjour maintains that, given his position as Chief of Police, he refrained from open political activities such as endorsing Republican or Democratic candidates for elected office. *Id.* at Interrogs. 4–6. Nonetheless, Mr. Conjour asserts that Ms. Buchmiller had access to records maintained in the Whitehall Township Treasurer's Office, Lehigh County Tax Office, and the Whitehall Township Solicitor, which contained background information regarding Mr. Conjour's political affiliation. *Id.* at Interrogs. 7–8. In addition, Mr. Conjour claims both Ms. Buchmiller and Mrs. Conjour, plaintiff's wife, were active in a 1989 political campaign for District Justice for District Court 31–1–07. *Id.* As a result of Mrs. Conjour's participation in this campaign, Mrs. Conjour's political connections

with the Republican Party were published in the newspaper. *Id.*

Mr. Conjour received a termination letter from Ms. Buchmiller, dated January 17, 1992, citing various grounds for his dismissal. Ms. Buchmiller referred to Mr. Conjour's "continued inability to fulfill his duties and responsibilities" as the primary grounds for his dismissal. Conj. Decl., Exh. 4. Ms. Buchmiller elaborated on Mr. Conjour's alleged deficiencies in his termination letter stating that:

> Among these inabilities are your failure to maintain the morale of the Department, your inability to make fair duty assignments without regard to favoritism or personal non-job-related considerations, your inability to maintain the dignity and decorum expected of the chief legal enforcement officer of the Township, and the need for a managerial reorganization of the Whitehall Township Police Department for the increased efficiency of operations.

Conj. Decl., Exh. A. Mr. Conjour was denied notice and the opportunity to rebut these allegations in a civil service hearing. In his eleven years with the Whitehall Township Police Department, Mr. Conjour asserts that he was never disciplined, and that he had in fact received numerous letters of commendation. Conj. Dep. at 32; Conj. Decl., ¶ 5 & Exhs. 4–5.

Mr. Conjour's termination was well publicized in numerous newspaper articles. Conj. Decl., ¶¶ 6–7 & Exh. 3. Ms. Buchmiller detailed the purported reasons for Mr. Conjour's termination to the media, stating that Mr. Conjour "did not adequately maintain the image [she] would expect of the chief law enforcement officer in the township," that the Police Department had been inefficiently run, and that Mr. Conjour failed to fulfill his duties. Conj. Decl., Exh. 3, Jan. 18, 1992 article, Jan. 25, 1992 article; *see also* Conj. Decl. Exh. 3, articles dated Feb. 4, 1992, March 20, 1992, and Oct. 15, 1992.

Mr. Sefcik was unsuccessful in replacing Mr. Conjour as Chief of Police. Buchmiller Dep. at 49. Mr. Sefcik was required to take a civil service examination as a prerequisite to employment as Chief of Police. Township Commissioners Linda Snyder and Glenn Solt

testified that members of the Civil Service Commission were allegedly threatened with removal if they did not provide Mr. Sefcik with a test that he could pass. *See* Bundy Dep. at 106, 113–14, 122–23; Solt Dep. at 30–34; Snyder Dep. at 156–57. Commissioner Solt testified that he had known Mr. Sefcik since 1972, and that, in his opinion, Mr. Sefcik was the least qualified individual to fill the position of Chief of Police. Commissioner Solt cited Mr. Sefcik's low arrest totals and failure to pass two promotional examinations as the basis of his unfavorable appraisal of Mr. Sefcik's qualifications. *Id.* at 10–11, 24. Ms. Buchmiller testified that she was aware that Mr. Sefcik had twice failed promotional exams and had no supervisory experience; she did not comment on his low arrest record. Buchmiller Dep. at 44–45. Mr. Sefcik's name was ultimately withdrawn as a candidate for the position of Chief of Police because of his failure to pass the civil service examination. Several commissioners testified that after Sefcik failed, Buchmiller forced the disbanding of the Commission. *See* Bundy Dep. at 105, 113–14, 122–23; Solt Dep. at 30–34; Snyder Dep. at 156–57.

Immediately after his termination as Chief of Police, Mr. Conjour began looking for full-time employment. Mr. Conjour applied for sixty positions around the country, but was unable to locate any full-time employment until April 5, 1993, when he was offered his current position as a patrolman for the Northampton Borough Police Department in Pennsylvania. Conj. Dep. at 5, 42–44. Mr. Conjour maintains that the wide-spread media coverage of his termination frustrated his job search because he was forced to address and rebut Ms. Buchmiller's allegations during job interviews. Conj. Decl., ¶¶ 6–7 & Exh. 3. At the time of his termination, Mr. Conjour was forty-eight years old. Conj. Dep. at 5. Mr. Sefcik was approximately five years younger than Mr. Conjour. Conj. Decl., Exh. 5, ¶ 6–7 & Exh. 3.

Conjour has sued under civil rights law 42 U.S.C. § 1983, claiming that Buchmiller and the Township violated his procedural due process and First Amendment rights, as well as the Age Discrimination in Employment Act.

## II. DISCUSSION

### A. Summary Judgment Standard

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Defendants are entitled to summary judgment only if no reasonable resolution of the conflicting evidence and the inference which could be drawn from that evidence could result in a judgment for the plaintiff. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where there is a dispute or disagreement over what inferences reasonably could be drawn from the facts, even if those facts are undisputed, it is improper to grant summary judgment. *See Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3d Cir.1991). However, "the mere existence of a scintilla of evidence in support of plaintiffs['] position will be insufficient[;] there must be evidence on which the jury could reasonably find for the plaintiff[s]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ The party moving for summary judgment must demonstrate that, under the undisputed facts, the non-movant has failed to introduce evidence supporting necessary elements of their case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant has demonstrated such a failure, the burden then shifts to the non-movant to identify which portions of the records support the allegedly unsupported elements. *Id.* at 322–23, 106 S.Ct. at 2552–53.

### B. Due Process Claim

The plaintiff alleges that the defendants violated his Fourteenth Amendment right to procedural due process when the defendants terminated him without notice or a hearing. It is undisputed that plaintiff was not afforded a hearing either before or after the termination of his employment. The plaintiff asserts that he was entitled to a hearing be-

cause he was deprived of a property interest in employment created by the Township's Civil Service Rules and his employee manual, and because he was deprived of liberty when in the course of terminating him the defendants also damaged his opportunities for future employment by making public statements that damaged his reputation.

### 1. Due Process Claim for Deprivation of Property

■ The question of whether Mr. Conjour possessed a legitimate property interest in continued employment with the Whitehall Township Police Department is resolved with reference to state law. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("Property interests ... are not created by the Constitution. Rather, they are defined by existing rules or understandings that stem from an independent source such as state law—rules, or understandings that secure certain benefits and that support claims of entitlement to those benefits."). While civil service protection can create that property interest, it is well settled under Pennsylvania law that before municipal employees may invoke the protection afforded by civil service regulations they must first demonstrate that their appointment was in compliance with those laws. *See Municipality of Penn Hills v. Municipality of Penn Hills Personnel Bd./Civil Serv. Comm'n,* 87 Pa.Cmwlth. 552, 487 A.2d 1048, 1050 (1985) ("the application of the civil service laws is a two way street, i.e., before one may invoke the protection afforded thereby, one must show that an appointment or promotion was in accordance with the laws in effect at the time of the appointment or promotion"); *see also Bernardi v. City of Scranton,* 598 F.Supp. 26, 30–32 (M.D.Pa. 1984); *Gallagher v. Board of Comm'rs,* 438 Pa. 280, 283, 264 A.2d 699, 701 (1970); *Snizaski v. Zaleski,* 410 Pa. 548, 549, 189 A.2d 284 (1963); *Manning v. Civil Serv. Cmm'n of Milbourne,* 387 Pa. 176, 179, 127 A.2d 599, 600–01 (1956); *Detoro v. Pittston,* 344 Pa. 254, 260, 25 A.2d 299, 302 (1942).

In determining whether civil service protection attaches, courts have repeatedly held that strict, not merely, substantial compliance is required. *Bernardi,* 598 F.Supp. at 31; *Snizaski,* 410 Pa. at 550, 189 A.2d 284. While such strict compliance may at times impact harshly on government personnel who were unaware of the shortcomings in their appointment, it is consistent with "the fundamental purpose" of civil service laws in Pennsylvania, to establish "a system whereby municipal employees would be selected on the basis of their qualifications." *See Bernardi,* 598 F.Supp. at 31 n. 8; *McCartney v. Johnston,* 326 Pa. 442, 191 A. 121, 123 (1937). Indeed, such strict adherence to civil service requirements serves as a prophylactic against the type of politically motivated personnel decisions which the plaintiff alleges as a cause of his termination. *See* Section C of Discussion.

Defendants assert two shortcomings in plaintiff's appointment. First, they argue that plaintiff was never subjected to the required non-competitive exam. Plaintiff has testified that he experienced an oral equivalent of the exam. He also asserts, I believe correctly, that such an exam, administered by the DCA, is an acceptable alternative to an exam conducted by the Civil Service Commission. Accordingly, plaintiff has raised a material issue of fact regarding whether he has complied with the exam requirement.

Plaintiff, however, has mounted no challenge to defendants assertion that he had not worked the required ten years on the Whitehall police force before achieving the Police Chief position. Indeed, he had never worked for Whitehall before earning the Chief job. Therefore, plaintiff's appointment was not carried out in strict compliance with the Civil Service regulation. Accordingly, plaintiff can not assert a property interest derived from those regulations for which he was entitled procedural due process.

■ Plaintiff also claims that a property interest was created by the discharge procedure in his employee manual. Pennsylvania law provides that an at-will employment arrangement can be altered by an implied contract such as an employee manual only if the employee can provide clear evidence that he and the employer intended to form a contract. *Rutherfoord v. Presbyterian–Univ. Hosp.,* 417 Pa.Super. 316, 612 A.2d 500, 503

(1992). A disclaimer such as that contained in the plaintiff's manual is a clear expression of the defendants' intent *not* to form a contract. *Cf. id.* 612 A.2d at 504. Therefore, plaintiff can not claim a property right derived from the manual.

### 2. Due Process Claim for Liberty Deprivation

Plaintiff also claims that, even in the absence of a property interest under state law, he was entitled to notice and a hearing in regards to his termination because the defendants' public announcements of plaintiff's inadequate performance, by damaging his reputation, and his opportunities for future employment, constituted a deprivation of liberty for which due process was owed.

The right invoked by the plaintiff was first established in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court, in ruling against a non-tenured professor terminated without a hearing acknowledged that ·

> [t]here might be cases in which a State refused to reemploy a person under such circumstances that interests in liberty would be implicated ... The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

*Id.* at 573, 92 S.Ct. at 2707. The Court continued by clarifying that "[t]he purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." *Id.* at 573 n. 12, 92 S.Ct. at 2707 n. 12.

■ The parameters of this due process right were circumscribed in *Paul v. Davis,*

424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). However-er, in *Siegert,* while the Court made clear that defamation by itself is not a constitutional deprivation, it confirmed the viability of *Roth* for a plaintiff who claimed a violation of a liberty interest because of damage to reputation in the context of a discharge or failure to rehire. *Siegert,* at 233–34, 111 S.Ct. at 1794; *see also Albrechta v. Borough of White Haven,* 810 F.Supp. 139, 145–46 (M.D.Pa. 1992). A claim for a liberty violation under *Roth* may be maintained without having a corresponding property interest in the job. *Habe v. Fort Cherry Sch. Dist.,* 786 F.Supp. 1216, 1218 (W.D.Pa.1992).

■ According to the facts as viewed most favorable to the plaintiff, his termination was accompanied by public statements by the defendants which stigmatized him in future efforts to attain employment. Plaintiff did not achieve full-time employment until April 5, 1993, more than a year after his termination. His current position is as a patrolman in Northampton, Pa., a position inferior to that he held in Whitehall Township. This evidence is sufficient to raise a material issue of fact regarding whether plaintiff's liberty interest in not having future employment opportunities impaired by defamatory charges issued during the course of termination was violated. *Cf. Habe* at 1218–19 (school superintendent's alleged statement in terminating substitute cook that her work record was "no good" was sufficient evidence to resist summary judgment on liberty violation claim); *see also Huntley v. Community Sch. Bd. of Brooklyn,* 543 F.2d 979, 984–86 (2d Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977).

### C. First Amendment Claim

Plaintiff asserts that he was terminated for his political affiliation, in favor of a political ally of defendant Buchmiller, thus violating his First Amendment rights of speech and association. The right not to terminated for political affiliation has been recognized by the Supreme Court. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574

(1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

■ Contrary to defendants' contention in its motion for summary judgment, the fact that the plaintiff was not politically active, and that in fact the defendants' may not have known of plaintiff's political affiliation, is not dispositive of plaintiff's First Amendment claim. The Third Circuit has explicitly rejected the argument that *Elrod* and *Branti* should not be extended to demotions or terminations carried out to make room for political supporters, because "[a] citizen's right not to support a candidate is every bit as protected as his right to support one." *Bennis v. Gable*, 823 F.2d 723, 731 (3d Cir.1987).

■ Since plaintiff's circumstances fall within the type protected under the First Amendment, I next turn to his burden of proof. Plaintiff must prove that political affiliation was a "substantial and motivating factor" in his termination, but he need not prove that it was the sole factor motivating his dismissal. *See Bennis*, 823 F.2d at 732; *Mitman v. Glascott*, 557 F.Supp. 429, 430–32 (E.D.Pa.1983), *aff'd* 732 F.2d 146 (3d Cir. 1984) (both adopting standard from *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Plaintiff has submitted evidence that defendant Buchmiller attempted to replace him with a political crony, Michael Sefcik. Three township commissioners, two of whom worked on Buchmiller's campaign, testified that Buchmiller talked throughout her campaign about replacing Conjour with Sefcik, a friend of Buchmiller's who participated, along with his wife, in Buchmiller's campaign. Bundy Dep. at 104, 106–10; Snyder Dep. at 144, 146, 154; Solt Dep. at 9–10, 28. Two of the commissioners testified that they perceived the replacement of Conjour with Sefcik as a political favor to Sefcik. Snyder Dep. at 147; Solt Dep. at 28. According to Commissioner Solt, Sefcik was among the least qualified policeman in the township for the police chief role. Solt Dep. at 9–10.

Under the *Mt. Healthy* analysis, once the plaintiff has proved, or on summary judgment shown that there is a material issue of fact, that protected activity was a substantial or motivating factor in the employment decision, the burden switches to the defendant to prove by a preponderance of the evidence that "it would have reached the same decision as to [plaintiff's employment status] even in the absence of the protected conduct. *Mt. Healthy Sch. Dist.*, 429 U.S. at 287, 97 S.Ct. at 576.

■ The defendants can point to two alternative reasons that plaintiff was terminated. First, when plaintiff was terminated, his letter of termination attributed to him inadequate fulfillment of his duties, and unfair treatment of subordinates. Conj.Decl., Exh. 4. In addition, defendants now assert that plaintiff was terminated primarily because his appointment did not comply with civil service requirements. *See* Brief in Support of Summary Judgment; Buchmiller Dep. at 40–41.

I find that the there is a material issue of fact regarding whether plaintiff would have been terminated absent the political/First Amendment considerations. The plaintiff has introduced evidence contradicting defendants' assertion that his performance was substandard. *See* Conj.Dep. at 32; Conj. Decl., ¶ 5 & Exhs. 4–5. Furthermore, plaintiff has introduced substantial evidence that the man whom Township Executive Buchmiller attempted to replace plaintiff with and whom plaintiff alleges was chosen based on political affiliation, Michael Sefcik, was unqualified for the position, both in terms of experience, and performance. *See* Solt Dep. at 5–6, 9–13, 24; *see also* Buchmiller Dep. at 71–74.

Defendants now assert that plaintiff was fired because of civil service irregularities. The fact that defendants have proved that plaintiff indeed was not hired in compliance with civil service regulations, while sufficient to justify summary judgment on the due process claim, does not by itself prove by a preponderance of the evidence that such noncompliance was why plaintiff was terminated. Indeed, defendants did not announce the civil service problems as a reason for the termination at the time it happened. This was so despite the fact that the civil service commission had been aware of the possibilities of civil service irregularities since 1986. Final-

ly, plaintiff has introduced evidence that defendant Buchmiller put pressure on the Commission before Sefcik's civil service examination, and, following his failure, motivated the disbanding of the Commission. This last action, if true, reveals civil service considerations as possibly a mere pretext for other motivations. Accordingly, I find that, at the summary judgment stage, defendant has not met its burden under *Mt. Healthy* in proving that plaintiff would have been terminated absent the consideration of political affiliation.

■ Defendant also raises, in its reply brief in support of summary judgment, the affirmative defense that plaintiff was in a policy making position for which political affiliation was an appropriate consideration for employment decisions. The Supreme Court has held that party affiliation may be an acceptable requirement "if an employee's private political beliefs would interfere with the discharge of his public duties." *See Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 367–68, 96 S.Ct. 2673, 2686–87, 49 L.Ed.2d 547 (1976).

Because the introduction of political affiliation as an employment factor is a significant encroachment on First Amendment activity and belief, the defendant must demonstrate an "overriding interest" in order to justify its use. *See Zold v. Township of Mantua*, 935 F.2d 633, 635 (3d Cir.1991); *Elrod*, 427 U.S. at 368, 96 S.Ct. at 2687. The Third Circuit has delineated the proper inquiry as

> not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.... [S]hould a difference in party affiliation be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment.

*Zold*, 935 F.2d at 635 (citations omitted).

My determination of whether political affiliation was an appropriate consideration for the termination of the plaintiff is necessarily fact specific, *id.*, as two cases cited by defendants illustrate. In *Whited v. Fields*, 581 F.Supp. 1444 (W.D.Va.1984), the District Court's holding that a newly elected county sheriff in Virginia could constitutionally replace his deputies on the basis that they had opposed his election was specifically predicated on the court's finding that *in Virginia* a sheriff is civilly and criminally liable for the acts of his deputies, and that, in fact, under the law the sheriff and deputy are considered "one person." *Id.* at 1455. In *Mele v. Fahy*, 579 F.Supp. 1576 (D.N.J.1984), the police director terminated by the township mayor occupied a position which by contract made him "solely responsible to the Mayor," *id.* at 1577. Furthermore, his termination by the new mayor occurred in tandem with the abolishing of the police director position, with its corresponding duties assumed by the current police chief, rather than to create an opening for a political patron of the new mayor. *Id.* at 1578. Other cases have held that a law enforcement position, absent other evidence of the need for political affiliation, is not necessarily subject to patronage dismissals. *See e.g. Elrod*, 427 U.S. at 347, 96 S.Ct. at 2673; *Barrett v. Thomas*, 649 F.2d 1193, 1199–1201 (5th Cir.1981).

In this instance, defendant has submitted as exhibits several job descriptions which delegate to plaintiff substantial discretion and policymaking authority. *See* Conj.Decl., Exh. 1. While this evidence is certainly relevant to the role of political affiliation, *Elrod*, 427 U.S. at 367–68, 96 S.Ct. at 2686–87, it does not by itself fulfill defendants' significant burden in overriding plaintiff's First Amendment interests.

The only other evidence introduced by defendant on this issue, an affidavit of John D. Myers, a former assistant township executive, confirms what was already clear from the job descriptions,—the police chief had policy making authority—but goes no further in proving that political allegiance to the Township Executive was a necessary element of the position. *See* Defendants' Reply Brief, Exh. 2.

Furthermore, the very civil service considerations which the defendants rely on in

resisting plaintiff's due process claim, *see* Section A of Discussion, contradict defendants' assertion that the police chief position is one properly tied to political allegiances. The Township's decision to attach civil service protection to the position, despite its failure to adhere to them when the plaintiff was first hired, indicates an intention to minimize the importance of political allegiance. Accordingly, I find that a material issue of fact remains for trial on the issue regarding whether there was an overriding interest in the defendants making political affiliation a qualification for the police chief position which overcomes plaintiff's right to freedom of speech and association, and I will deny summary judgment on this issue.

### D. Age Discrimination Claim

Plaintiff has also brought a claim under the Age Discrimination in Employment Act, based on the Township's attempt to replace him, at 48 years of age, with Michael Sefcik, who was 43 years old.

Age discrimination claims which are not supported by direct evidence, are evaluated under the burden shifting test spelled out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff must first meet a prima facie case by showing that he was: (i) within the protected class (over 40 years of age); (ii) was qualified for the position he held; (iii) was dismissed despite being qualified; and (iv) was replaced by a younger person. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir.1992). If the plaintiff meets this requirement the burden switches to the defendants to articulate a legitimate, non-discriminatory reason for the employment decision. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. Plaintiff then has the opportunity to establish that the stated reason or reasons for the termination are a pretext for discrimination. *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2749.

Even if plaintiff proves that the reasons proffered for the termination are pretextual, he still maintains the ultimate burden of proving that the termination was motivated by discriminatory intent. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2749. While it is permissible for the district judge to infer discriminatory intent from the facts of the *prima facie* case and the plaintiff's refutation of the defendant's explanation, that inference is not compelled. *Id.* —— U.S. at ———— at 2747–48.

In this instance, plaintiff arguably fails to make out the *prima facie* case. While the fact that the plaintiff's intended replacement was himself over forty years old and only five years younger than the plaintiff does not rule out an age discrimination claim, it certainly weighs less in plaintiff's favor than a greater age discrepancy. *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 764–65 (3d Cir.1989); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793 (3d Cir.1985), *cert. denied* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). However, even if plaintiff is conceded the *prima facie* case, and even if I would ultimately decide that the reasons for the termination offered by the defendants—quality of work, and the civil service irregularities—are pretextual, plaintiff still falls too far short of his ultimate burden of proving that his termination was motivated by a discriminatory intent regarding his age to allow him to proceed with this claim to trial.

The only evidence which plaintiff offers to show that his termination was age motivated is the very slight difference in age between himself and Sefcik. While this difference is arguably enough to make out a *prima facie* case, by itself it carries almost no weight in showing an improper intent on the part of the defendants. *See Maxfield*, 766 F.2d at 793.

Plaintiffs bringing discrimination claims may also point to the falsity of the defendants' proffered reasons for termination as evidence of discrimination. *Hicks*, —— U.S. at ————, 113 S.Ct. at 2747–48. However, in this case, even were I to find pretext, the false reasons are as likely to have been offered as an alternative to admitting an improper politically motivated termination,

as an excuse for an age motivated termination. As the Supreme Court observed in *Hicks,* the defendants' proffered reason cannot be proved to be a " 'pretext *for discrimination* ' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* —— U.S. at ——, 113 S.Ct. at 2752 (emphasis in original). Given the facts of this case there is no justification for treating pretextual reasons offered by the defendants as evidence of an attempt to justify discrimination which was actually based on age. Therefore, I find that plaintiff has not offered more than a scintilla of evidence in response to defendants' summary judgment motion on this issue, and I will grant summary judgment on this issue.

Therefore, IT IS ORDERED that:

1. The motion for summary judgment on plaintiff's procedural due process claim based on deprivation of a property interest is GRANTED, and the claim is dismissed.

2. The motion for summary judgment on plaintiff's procedural due process claim based on deprivation of a liberty interest is DENIED.

3. The motion for summary judgment on plaintiff's First Amendment claim is DENIED.

4. The motion for summary judgment on plaintiff's ADEA claim is GRANTED, and the claim is dismissed.